New-Haven,
July, 1839.

English
*v.*
Smith.

---

THE SOUTH SCHOOL DISTRICT *against* BLAKESLEE.

Where a school society divided itself into five districts, and prescribed the limits of each, designating them as the *Eastern, Middle, Southern, Western* and *Northern ;* it was held, 1. that these terms were used as *descriptive* of the several districts, and not for the purpose of fixing their *names ;* 2. that consequently, evidence that one of such districts had been known and called by the name of the *South District,* was admissible.

Where a meeting of a school district is held for a special purpose, all that is requisite in the form of notice, is, that it should be so expressed as that the in-

*New-Haven,*
July, 1839.

South School
District
*v.*
Blakeslee.

habitants of the district may fairly understand the purpose for which they are to be convened.

Therefore, where the purpose of the meeting was, to decide whether the inhabitants would direct a suit to be commenced for the damage then lately done to the school-house and its furniture, and appoint agents to conduct a suit, if necessary ; and the notice, after mentioning the time and place of the meeting, stated this purpose, nearly in these words ; it was held, that such notice was sufficient, although it did not specify the nature or amount of the damage, or when or by whom it was done.

Where it appears from the record of a school district, that it was held on the day appointed, the presumption of law is, that it was held in a suitable time in the day and in pursuance of the warning ; and if a party claims it to have been held otherwise, the burden of proof rests upon him.

The meeting should be opened within a reasonable time after the hour specified in the notice ; and what is a resonable time, depends, in some measure, upon the circumstances of each particular case ; but a delay of one hour and five minutes is not, of itself, an unreasonable delay, there being no law, necessarily requiring the meeting to be opened within that time.

The records of a school district are proper and legitimate evidence of its votes, for such district, in a suit to which it is a party.

A party may acquire a title to land, by an uninterrupted and adverse possession of more than fifteen years ; and it makes no difference, in such case, whether he entered under an invalid conveyance or without one.   That the possession commenced under a parol gift, does not affect its adverse character.

A title to real estate cannot be proved by reputation.   Therefore, where a party offered evidence to shew, that the land in controversy had been called the land of *J. S.*, under whom he claimed ; it was held, that such evidence was inadmissible.

THIS was an action of trespass for forcible injuries to the school-house of the plaintiffs, its fixtures and furniture.   The plaintiffs were described as " *The South School District*, situated in the society of *Northford*, in the town of *North-Branford*, in *New-Haven* county ;" and the action was alleged to be prosecuted by " *Samuel Bartholomew, Joel Augur* and *Russell B. Dowd*, inhabitants of said *South School District*, and duly appointed agents of the same."

The defendant pleaded in abatement, 1st, That said *Samuel Bartholomew, Joel Augur* and *Russell B. Dowd*, are not now, and have never been, appointed agents, authorized to institute and prosecute this suit ; nor have they, or either of them, any such power ; nor has any person or persons ever been authorized for that purpose.

2dly, That there is not now, and never has been, any such person, natural or artificial, or body politic, as *The South School District*, in the society of *Northford*, in the town of

*North-Branford*, at whose suit said writ and declaration are supposed to be brought.

New-Haven,
July, 1839.

South School
District
*v.*
Blakeslee.

3dly, That *Peter Tyler* and others [naming them] members of the school district in *Northford*, are now, and ever have been, opposed to this present action, and to any such suit; they having as full rights and powers to sue and defend in reference to said school district as said *Bartholomew, Augur* and *Dowd*, who assume to act as agents.

The plaintiffs replied, That they are now, and for more than thirty years last past have been, a community and body politic, legally constituted a school district, in the *Southern* part of the school society in *Northford*, as will fully appear by the record of said *Northford* school society, of which the following are copies :

"*Northford, Dec.* 20th, 1798.   At a meeting of the inhabitants of *Northford*, legally warned and holden at the meeting-house, for the purpose of constituting a school society according to law.

" Deac. *Phineas Baldwin* was chosen moderator, and *William Douglas*, clerk.

" *Voted*, That *Dan Linsley, John Potter, Elnathan Tyler* and *William Douglas*, be the school society committee.

" *Voted*, That *Stephen Maltby* be treasurer.

" *Voted*, That *Elihu Foote, John Maltby, Jacob Bunnel*, jr., *Samuel Tibballs* and *Jonathan Maltby*, be district committee.

" *Voted*, That *Jonathan Maltby, Matthew Noyes, Aaron Cook, Benjamin Maltby* and *John Potter*, be visitors to visit and inspect the several schools in this society.

" *Voted*, That this meeting be adjourned without day."

"*Northford, Nov.* 2d, 1799.   At a school society meeting, legally warned and holden at the meeting-house :

" *Benjamin Maltby* was chosen moderator, and *William Douglas*, clerk.   [Then follow votes appointing school society committee, district committee, treasurer and visitors.]

" *Voted,* That the society committee make inquiry into and agree upon the limits of the several districts in this society, and make report to their next meeting.

" *Voted,* That this meeting be adjourned until the second *Monday* in *December* next, at 2 o'clock, *P. M.*"

" *Northford, Dec.* 9th, 1799.   Met according to adjournment.

"*Voted,* That the several districts in this society be limited according to the report of the committee, which is as follows, *viz. Eastern District,* bounded, &c. ; *Middle District,* bounded, &c. ; *Southern District,* bounded *Northward* so as to include *Jonathan Tyler, Westward* so as to include *John Augur* and *John Foot,* 2d., *Southward* so as to include *Samuel Bunnell,* and *Eastward* by *North-Branford* line : *Western District,* bounded, &c. : *Northern District,* bounded, &c."

And said community first-mentioned, now is, and ever since the formation of the same as aforesaid has been, described, known and named *The Southern School District,* and not otherwise ; and the same is situated in the town of *North-Branford* aforesaid, and in the school society of *Northford* aforesaid. And said community and school district, being the present plaintiffs, appear and prosecute this suit, as by law they have a right to do, by their agents, *viz.* said *Samuel Bartholomew, Joel Augur* and *Russell B. Dowd,* inhabitants of said school district, who, before the commencement of this suit, had been legally appointed agents for the purpose aforesaid, at a lawful meeting of such school district, as will fully appear, by the records thereof : and although said *Peter Tyler* and others, named and referred to in the defendant's plea, were opposed to the appointment of said agents, yet said persons so opposed were and are a minority of the inhabitants and legal voters of said school district : and said agents were, nevertheless, legally appointed as such agents, by a large majority of the inhabitants, being legal voters, of said school district.

On this replication issue was joined.

On the trial of this issue, at *New-Haven, January* term, 1839, before *Bissell,* J., the plaintiffs, after producing and proving the records and votes of the *Northford School Society,* as set forth in their replication, offered evidence tending to prove, that the school district formed by that society in the *Southern* part thereof, had, ever since its formation, been called and known as the *South School District,* and by that name, had uniformly (with a single exception) kept its records and accounts, and was so acknowledged, by the defendant himself, as well as by the public generally. To the admission of this evidence the defendant objected, on the ground that the votes

of the school society established the district by the name of the *New-Haven, July, 1839.*
*Southern,* and not of the *South School District;* and that
the suit should have been brought, if at all, in the name of the *South School District v. Blakeslee.*
*Southern School District.* But the court overruled the objection, and allowed the evidence to go to the jury.

The plaintiffs, for the purpose of proving that the suit was legally brought, and that said *Bartholomew, Augur* and *Dowd* were duly appointed agents of the district, with authority to bring and prosecute the suit, offered in evidence the following notice, signed by the committee of the district, accompanied by proof that it had been duly posted and published ; also, the following record of said school district of a meeting held pursuant to such notice :

" Notice is hereby given to the legal voters in the *South School District* in *Northford,* that there will be a school meeting at the dwelling-house of *Samuel Bartholomew, Thursday, August* 24th, 1837, at 6 o'clock, *P. M.,* to decide whether they will direct a suit to be commenced for the damage lately done to the school-house and furniture, and to appoint agents for the purpose of conducting a suit, if necessary. *Northford, August* 18th, 1837."

"At a school meeting of the *South School District* in *Northford,* legally warned and holden, at the house of *Samuel Bartholomew, August* 24th, 1837.

" *Voted, Edward Foot,* moderator.

" *Voted,* That we will appoint one or more persons, who shall have power to act according to their best judgment for the interest and welfare of the district, with respect to the damage done to their school-house and furniture, in said district, with power also to sue in the name of the district, if occasion may require.

" *Voted,* That *Samuel Bartholomew, Joel Augur* and *Russell B. Dowd,* be agents for that purpose."

To the admission of this evidence the defendant objected, on the ground that the notice was not sufficiently specific in regard to the objects of the meeting and was insufficient to authorize the vote ; and also on the ground that the entries of the votes of said district on its books, being of a private nature, were not evidence against third persons. The court overruled the objection and admitted the evidence.

The defendant, for the purpose of proving that said school

South School
District
*v.*
Blakeslee.

district meeting was not legally held, and consequently that the committee were not legally appointed, offered evidence to prove, and claimed that he had proved, that said meeting was not opened until 5 minutes after 7 o'clock ; and that as soon as the clock struck 7, the defendant, *Peter Tyler*, and one other person, all of whom were legal voters in said district, left the house, claiming that no meeting could then be legally holden. And the defendant requested the court to charge the jury, that if these facts were true, the meeting could not be legally holden. The court did not so charge the jury ; and they returned a verdict for the plaintiffs, on the plea in abatement.

On the trial on the issue of *Not guilty*, the plaintiffs claimed title to the premises, by an uninterrupted and adverse possession thereof, for more than thirty years, and introduced evidence to prove such title.   To rebut this, the defendant offered evidence to prove, and claimed to have proved, a title to the premises in himself, derived through sundry conveyances from *Joseph Augur*, who, it was admitted, owned the land more than thirty years ago ;  and he further claimed to have proved, that when the plaintiffs entered into possession of the land on which the school-house was erected, it was verbally given by him to the district ; and the defendant claimed, that if it was so given, and the plaintiffs thereupon entered, although they have held adversely to said *Augur*, and all claiming under him, for more than thirty years, they could not thereby acquire a title ; and the defendant prayed the court so to instruct the jury.   The court instructed the jury, that by an uninterrupted and adverse possession of more than fifteen years, the plaintiffs might acquire a title to the premises ; and the question of such possession was left to the jury.

The defendant, further to repel the plaintiffs' claim of title founded on adverse possession, offered evidence to prove, that the school-house in question, ever since its erection, has been sometimes called, by persons living in the district and others, " *Joseph Augur's* school-house," and had been publicly called and reported to be his.   To the admission of this evidence the plaintiffs objected ; and the court excluded it.

The plaintiffs obtained a verdict ; and the defendant moved for a new trial.

*Mix*, in support of the motion, contended, 1. That the court

should have rejected all the evidence, which went to prove a name of the district by reputation, different from its original name. Municipal corporations take their name from their charter or formation ; and this name is as unchangeable as a man's name of baptism. *Willcock on Mun. Corp.* 34. & seq. This discrepancy is sufficient to abate the suit. *Id.* 37, 8.

2. That the court should have rejected the votes of the school district. First, because the notice of the meeting was insufficient. It does not specify *when* the damage was done, *what* or *how much* it was, or *by whom* it was done. *Hayden* v. *Noyes,* 5 *Conn. Rep.* 391. *Willard* v. *Killingworth Borough,* 8 *Conn. Rep.* 248. Secondly, because the votes passed do not give the committee authority to bring this suit. Thirdly, because these entries on the books are not evidence in favour of the district against third persons : a party cannot thus make evidence for himself. 1 *Phil. Ev.* 319. *Rosc. Ev.* 23.

3. That the meeting could not be opened after the hour had expired, and members had gone away on that account. *That* is the *usual* time for waiting, and is a *reasonable* time. The powers of these inferior corporations are to be *strictly* pursued. 8 *Conn. Rep.* 254. per *Daggett,* J.

4. That the court should have charged the jury, that if they found this land was originally verbally given, there could be no adverse possession. This shews that the possession was not hostile in its inception.

5. That the evidence should have been admitted to shew that the school-house had been publicly called and reputed to be "*Joseph Augur's* school-house." This was pertinent evidence to shew *how the district held it.*

*R. I. Ingersoll,* contra, was stopped by the court.

WAITE, J. 1. School districts in this state are not usually created by particular acts of the legislature, but under a general statute, providing that "each school society shall have power to divide itself into, and establish proper and necessary districts for keeping schools, and to alter them from time to time as there may be occasion." *Stat.* 398. *tit.* 84. *c.* 1. *s.* 3. There is no provision in the statute, making it necessary for the society, in establishing a district, to designate the name by

*New-Haven,*
*July,* 1839.

South School
District
*v.*
Blakeslee.

which it shall be called ; nor is it usual, in practice. Hence, when a district is formed, the inhabitants generally assume such name as they think proper,—most commonly one descriptive of its particular situation in the society. The evidence, therefore, that the district had been known and called by the name of the *South School District,* was properly admitted.

There is nothing in the votes of the society rendering such evidence improper. It is obvious from an inspection of them, that they were not intended to give *names* to the several districts, but to define their boundaries. The terms, *Eastern, Middle, Southern* and *Western* were used merely as descriptive of the several districts, and not for the purpose of fixing their names.

2. The warning sufficiently specified the object for which the meeting was called. It was to be holden for the purpose of enabling the inhabitants to decide whether they would direct a suit to be commenced for the damages then lately done to the school-house and the furniture, and appoint agents to conduct a suit, if necessary. No one acquainted with the affairs of the district could entertain a reasonable doubt as to the object of the meeting. The votes were passed in conformity with the notice. It is not necessary that a notification should be drawn up with all the formality of a special plea. All that is required, is, that it should be so expressed as that the inhabitants of the district may fairly understand the purpose for which they are to be convened.

3. It is necessary that a meeting of the inhabitants of a district, society or town should be opened within a reasonable time after the hour specified. What would be a reasonable time, depends, in some measure, upon the circumstances of each particular case. A town meeting is sometimes warned to be holden at nine o'clock in the forenoon, and not opened until some hours after that time. If the delay is for the mere purpose of enabling all the inhabitants to assemble, and without prejudice to any one, it would be outrageously unjust to hold their proceedings illegal. But on the other hand, if it were such as to create a general belief that no meeting would be holden, and thereby induce the great body of the inhabitants to disperse ; and a few were afterwards to open the meeting, and pass votes, which could not have been passed except for the delay ; it would be unjust to hold them legal and binding.

The record produced in evidence was in the usual form. The presumption of law is, that the meeting was holden at a suitable and proper time in the day, and in pursuance of the warning. If the defendant claims, that the proceedings were illegal, the burden of proof is upon him. If there was an unreasonable delay in opening the meeting, he must shew it. This he has not done, by merely proving that there was a delay of one hour and five minutes; for there is no law, statute or common, that necessarily requires the meeting to be opened within that time after the hour appointed. Nor has he done it, by merely proving, that a few persons left; for they may have gone away for the very purpose of preventing the meeting from acting. If there were any particular circumstances, which rendered a delay of that length of time unreasonable, the defendant ought to have shewn them.

4. The records of the district were proper and legitimate evidence.

5. The instruction given to the jury, that by an uninterrupted and adverse possession of more than fifteen years, the plaintiffs might acquire a title, was perfectly correct. It makes no difference, in such case, whether they entered under an invalid conveyance, or without one; nor whether a conveyance was attempted to be made by parol, or by a deed defective for want of the requisite number of witnesses. If indeed the circumstances under which they entered were such as to repel the presumption of an adverse possession, they might be shewn. But a parol gift of lands can have no such effect. This principle has been repeatedly recognized, by this court. In *Griswold* v. *Butler* and wife, 3 *Conn. Rep.* 246. the court say, any possession of land, which is accompanied by the recognition of a superior title still existing, would not be adverse to that title. But where a person takes possession under a *parol agreement* for a purchase, and pays for the land; or purchases it and takes a deed, which is defective; the possession of the purchaser which ensues, is, *prima facie*, under a claim of title in himself; and is, therefore, adverse. *Bryan* & al. v. *Atwater*, 5 *Day* 181. *French* v. *Pearce*, 8 *Conn. Rep.* 439.

6. The evidence that the house was sometimes called *Joseph Augur's* school-house, and had been publicly reputed to be his, was very properly rejected. A man's general character may be proved by reputation, but not his title to real estate.

New-Haven,
July, 1839.
_____
South School
District
v.
Blakeslee.

We have not been able to discover any error in the proceedings of the court below; and therefore, do not advise the granting of a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.