CHARLES P. OATMAN *v.* ELIHU ANDREW.

*Deposition.   Caption.   Amendment.   Dividing Line.   Evidence.*

The certificate of a magistrate taking a deposition, that the deponent was by reason of age and infirmity "unsuitable" to attend the trial, *held* insufficient.

After a deposition is filed, the magistrate taking it has no right or authority to make amendments or alterations in the caption. But the court in their discretion may grant leave to amend the caption so as to correspond with the facts as they appeared at the time of taking the deposition; and may affirm and ratify such amendment made without leave; and although it is not stated in the exceptions that the county court approved of the amendment, it is to be presumed the court did approve of it, from the fact that the deposition was admitted.

Where the question was as to the location of the dividing line between adjoining owners, and it appeared that there was a line of marked trees, but the testimony fell short of tending to show, in respect to this line, all that is necessary in order that a line other than the true line may become the established line, it was *held* that the court properly declined to submit to the jury whether this line of trees had been so established; and that in the charge to the jury that the existence of this line of marked trees might be considered in connection with the other evidence and circumstances in the case, as bearing upon the question as to where, in fact, the line in controversy was, there was no error.

The description of a boundary in a deed as being, on one side, a "Pierce farm," or a "Hale farm," is but a declaration of the grantor at the time of conveying, and being incorporated in a deed does not render it any more admissible as evidence than if made at any other time or place. And the deeds in this case containing such descriptive declarations and offered to establish a boundary, *held* inadmissible—it not appearing that the grantors were dead.

TRESPASS, *qui. cl. fr.* Plea, the general issue. Trial by jury, June term, 1870, WHEELER, J., presiding. Upon the trial the plaintiff claimed to recover for entering upon a part of lot No. 23, in Arlington, by the defendant, and cutting and carrying away trees.

The plaintiff introduced evidence that showed him to have title to, and possession of, the south half of the lot except fifteen acres that had been reserved by the grantors off from the west end of the lot before it was divided.

The plaintiff also introduced evidence tending to show that those from whom he derived title had at various times cut trees and done other acts upon the fifteen acres reserved, and claimed that upon this evidence the title or possession was so far shown to have been in him as to entitle him to have his right to recover for the cutting of trees by the defendant upon the fifteen acres sub-

mitted to the jury; but the court decided that his testimony did not tend to show any right in him to recover for injuries done to the fifteen acres.

It appeared that the west end of lot No. 23 was rectangular in shape, and extended up on to the east side of a mountain and had never been enclosed by fence. It has always been occupied as a farm, the buildings and cultivated lands being upon the eastern and middle portions; for several years it was owned and occupied by one Pierce, and came to be known in that vicinity as the Pierce farm; and from before April 23d, 1844, to after March 9, 1846, it was owned and occupied by Levi Hale.

There was no controversy between the parties as to the location of any of the lines of lot No. 23, except the west line, and the distance which the north and south lines at the west end extended west; neither was there any controversy about the entry and cutting and carrying away trees by the defendant upon a part of lot No. 23, not far from where the fifteen acres and the plaintiff's land meet; but the plaintiff claimed that the west line of the lot run at right angles from the south line, at a black oak stub, to the north line, and that fifteen acres east from it would not include the place where the defendant entered and cut, but would leave it on the plaintiff's land; and the defendant claimed that the west line of the lot run at right angles from the south line, at a black oak stump, about eleven rods east of the black oak stub, to the north line, and that fifteen acres east of it would include the place where the defendant entered and cut.

The only questions submitted to the jury were as to the location of the west line, the distance fifteen acres would extend east from it, whether the defendant entered and cut on the plaintiff's side of the east line of the fifteen acres or not, and the amount of the damages if he did.

Among other evidence the plaintiff offered the deposition of one Henry Corey; with reference to which it appeared that when it was taken, the justice who took it certified the cause for taking it to be that the deponent was by reason of age and infirmity " unsuitable " to attend court, and sealed it; that upon a former trial it was objected to for insufficiency of the certificate, and that since

then, without notice to or consent of the defendant, the justice who took it had amended the certificate by changing the word ' unsuitable ' to *unable*, and by certifying his reasons for making that change, and that he had not since then sealed up the deposition. The defendant objected to the admission of the deposition, but the objection was overruled by the court, and the deposition admitted, to which the defendant excepted.

The plaintiff, in connection with evidence tending to show that the northwest corner of the lot of land lying next south of the west end of lot No. 23 was the black oak stub where he claimed the southwest corner of lot No. 23 to be, offered in evidence a deed of a part of that part of that lot lying next to the line between the black oak stub where the plaintiff claimed the west line of lot No. 23 to be, and the black oak stump where the defendant claimed that line to be, from Henry Corey and wife to Simeon Martin, dated March 10th, 1828, in which the premises conveyed are described as bounded north by the Pierce farm ; also a deed of another part of that lot lying next to the same line, between the stub and the stump, from John Mattison to Samuel Ames, dated April 23d, 1844, and a deed of the same from Samuel Ames to Walter Perkins, dated March 9th, 1846, in each of which the premises conveyed are described as bounded north by Levi Hale. To the admission of these deeds the defendant objected, but the court overruled the objection and admitted them in evidence, to which the defendant excepted.

The fifteen acres reserved were not described in the conveyances in which the reservation was made, by any lines or corners.

The defendant among other evidence introduced evidence tending to show that there was a line of marked trees running across lot No. 23, near where he claimed the line between the fifteen acres reserved and the rest of the lot to be, but there was no evidence tending to show by whom or when it was made.

The defendant requested the court to submit to the jury whether this line of marked trees had been established as the line between the fifteen acres reserved and the rest of the lot or not, but the court decided that there was no evidence tending to show that this line had ever been so established, and declined to submit that

question to the jury, and as to this part of the case charged the jury that the existence of this line of marked trees, in connection with its distance from and relation to the line in controversy, might be considered in connection with the other evidence and circumstances in the case as bearing upon the question as to where in fact the line in controversy was. To these decisions, and this part of the charge, the defendant excepted.

The jury returned a verdict for the plaintiff, with a special finding that the corner of lot No. 23 was at the oak stub where the plaintiff claimed it to be, and that the east line of the reserve was twenty-four rods east of that corner.

*A. B. Gardner, J. K. Batchelder* and *G. W. Harmon*, for the defendant.

The county court erred in admitting, against the objection of the defendant, the deposition of Henry Corey; also in admitting the deeds wherein the premises are described as bounded north by the Pierce farm and by Levi Hale. The statements in these deeds are hearsay; as much so as would have been the declaration of the grantors, if, in passing along over their lands, they had said " that is the Pierce farm," or " Levi Hale owns that land." And hearsay is not evidence. They cannot be brought under any of the exceptions to the rejection of hearsay statements. 1 Greenleaf's Ev., § 169, *et. seq.*; *Attorney General* v. *Stephens*, 6 De Gex. M. & G., 139; *South School District* v. *Blakesley*, 13 Conn., 227; *Howland* v. *Crocker*, 7 Allen, 153; *Sullivan* v. *Lowder*, 11 Maine, 426.

The county court should have submitted to the jury the question in regard to the line of marked trees, as requested by the defendant. It mattered not by whom or when the line was made.

*A. L. Miner*, for the plaintiff.

The deed from Corey to Martin in 1828 and the other two deeds were properly admitted. They were offered in connection with testimony tending to show that the " black oak stub " was the northwest corner of the lot next south. These deeds bounded the land next south, on the Pierce farm, which could not have been

true, if the "stump" instead of "stub" had been the southwest corner of the Pierce farm. *Ancient* deeds of adjoining lands may be shown as having a bearing upon location. One of these deeds was forty-two years old, the others, twenty-six and twenty-four.

As to the supposed line of marked trees, running across No. 23, near where the defendant claimed the east line of the reserve should be, there was no testimony tending to show *when*, or *by whom*, or for *what purpose* this line was marked, or that it had ever been recognized as a line. The charge was all that could be asked.

The opinion of the court was delivered by

Ross, J. The first question arising on the exceptions is on the admissibility of the deposition of Henry Corey. The magistrate certified : " The deponent being so aged and infirm in health as to render him unsuitable to attend the trial, is the cause of taking the deposition." The deposition had been used on a former trial, against the defendant's objection. Before it was offered for use in the court below on the last trial, the magistrate, without leave of court, had stricken out the second syllable from the word " unsuitable," leaving it " unable," and appended a note to the caption, stating that he had made the alteration " on the suggestion that the word unsuitable was not precisely the word of the statute, and that the same should have been unable. I altered said word so as to read unable, which was my then opinion of the witness, at the time of taking the deposition." In this condition the deposition was admitted, against the defendant's exception. The statute allows a deposition to be taken and used when the deponent, " by reason of age, sickness or other bodily infirmity, is rendered incapable of traveling and appearing at court." The cause for taking the deposition, as originally certified, we do not regard as substantially the same cause stated in the statute. A magistrate might, frequently, certify that a person, by reason of age and infirmity of health, was unsuitable to attend the trial of the cause, when he would not certify that the deponent was thereby rendered incapable of traveling and appearing at court. The unsuitableness might arise from the condition of the deponent's

mind when affected by age and infirmity of health. The statute contemplates only a physical incapacity arising from the same causes. As the caption originally stood, we hold the deposition should not have been admitted.

It is not contended, with the alteration, that the statutory cause is not substantially set forth, but it is claimed that the magistrate had no right or authority to make the alteration. After a deposition has been once used, or after the party taking it has caused it to be filed as one of the papers in the cause, the magistrate taking it has no more right or authority to make any amendment to or alterations in the caption than a party has to make alterations in his writ after he has entered it in court. The deposition in such a case has become a part of the files in the cause, and is in the custody of the court, and no amendment can properly be made without the permission of the court. The court may in their sound discretion grant the magistrate leave to amend the caption so as to correspond with the facts as they appeared at the time of taking the deposition, the same as they may allow amendments in other papers in the cause. The court, having the power to allow the magistrate to amend the caption, may approve of and ratify an amendment properly made without leave. This naturally flows from the power to grant leave to amend. Although it is not stated in the exceptions that the county court approved of the amendment, it is to be presumed the court did approve of it from the fact the deposition was admitted. We therefore find no error in the court below in admitting the deposition.

The defendant excepted to the ruling of the county court in refusing to submit to the jury the question whether a certain line of marked trees across the lot had been established as the line between the fifteen acres reserved off from the west end of the lot and the rest of the lot. That a line other than the true line may become the established line between adjoining owners, where there has been no actual occupancy to the line by either, the owners on each side of the line, or their grantors, must have treated it as the true line, by acquiescing in it as such, for fifteen consecutive years. The reporter's minutes contain some evidence tending to

show that the owners of the rest of the lot had pointed out, at various times, the line of marked trees as the line to which they claimed ; but there was no evidence showing when or by whom this line was made, or that the owners of the fifteen acres had ever treated it as the true line. Inasmuch as this testimony falls short of tending to show all that is necessary in order that a line other than the true line may become the established line, and as the court gave the defendant the full benefit of the existence of the line of marked trees, in determining the location of the true line, we find no error in this ruling and charge of the court.

Neither the deed from Henry Corey and wife to Simeon Martin, in which the premises conveyed are described as bounded on the north by the Pierce farm, nor the deeds from John Mattison to Samuel Ames, and from Samuel Ames to Walter Perkins, in which the premises conveyed are described as bounded north by land of Levi Hale, mention the black oak stub, where the plaintiff claimed the southwest corner to be, as a corner or monument on the common line. Neither were the grantors in those deeds shown to have deceased. The most that can be claimed from these deeds is that Corey, when conveying, called the land on the north, between the black oak stub and black oak stump, the Pierce farm, and the other grantors called the land on the north of their land between the same points, the land of Levi Hale. The fact that these declarations,—for they can be regarded as nothing more than declarations,—of the grantors were made at the time of conveying their lands, and were incorporated into their deeds, do not render them any more admissible than if made at any other time or in any other places. We do not think they fall within any of the exceptions to the general rule excluding hearsay testimony. It has frequently been held that testimony that a piece of land had been known or called as the land of a particular person, is inadmissible to establish the title to real estate. *Howand* v. *Crocker*, 7 Allen, 153 ; *Sullivan* v. *Lowder*, 11 Me., 426 ; *South School District* v. *Blakesley*, 13 Conn., 227. In the admission of this testimony we think the county court erred.

The judgment is therefore reversed and cause remanded.