**TALO of Pago Pago, Plaintiff**

**v.**

**TAVAI of Pago Pago, Defendant**

No. 14-1938

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Laolao" (Laolao II) in Pago Pago]

June 30, 1939

A. A. MORROW, *Chief Justice;* LIUFAU, *Associate Judge.*

Heard at Fagatogo May 23, 1939.
Crossfield Hunkin and Afasa for Talo; Poi for Tavai.

MORROW, *Chief Justice.*

Tavai applied to the Registrar of Titles to have the land Laolao in Pago Pago registered as his property. Talo filed an objection to such proposed registration, claiming the land as his. Hence the litigation. See Sec. 74 of the Codification. At the opening of the trial each of the respective parties stated that the land was the communal property of

his matai family and not his own individual property. It is apparent from the provisions of the above section that it was the legislative intent that the claims of all persons to a tract of land offered for registration not made within the required time after the filing of the application to register it should be barred. The land then must be registered as the matai property of the Tavai unless Talo's claim is found valid.

We have gone over the evidence with great care and are convinced, despite some conflict in the testimony, that the following facts are fully established by a clear preponderance of the evidence:

1. At a time many years prior to the establishment of the Government in 1900 the land in dispute was in the possession of Tavai Tausuai.

2. Tavai Faaiu succeeded Tavai Tausuai as the matai of the Tavai family and thereupon took possession.

3. About 1895 Tavai Pauatu succeeded Tavai Faaiu and thereupon went into possession, which possession continued until the death of Tavai Pauatu about 1906.

4. Upon Tavai Pauatu's death, Tavai Suafala succeeded to the name and went into possession which possession continued until 1934 when, pursuant to and in reliance on oral permission given by Tavai Suafala to Talo to enter upon and make use of the land, Talo entered, put up three fales and a cook house, put in some plantations and has continued to occupy and use the land to the present time.

5. Tavai Suafala died in 1937 and was succeeded by Tavai Laufaia, the proponent.

6. Tavai Laufaia, sometime before making his application to have land registered as his property notified Talo to quit the premises. Talo disregarded the notice asserting that Laolao was his land and not the property of Tavai.

7. The possession of Laolao by the Tavais at least from as far back as 1903 and up to the time the above mentioned permission was granted in 1934 was open, notorious, actual, visible, exclusive, continuous, hostile and under a claim of right.

█ This Court has decided that the Statute of 21 James I, C. 16, passed by the English Parliament in 1623 limiting

actions for the recovery of real property, subject to certain exceptions not here applicable, to twenty years is a part of the law of American Samoa. *Talo v. Poi*, No. 16-1937; *Leapaga v. Taumua L.*, No. 8-1938. The result of adverse possession for twenty years is to divest the true owner of his title and to vest it in the adverse possessor. *Maxwell Land Grant Co. v. Dawson*, 151 U.S. 486, 14 S.Ct. 458, 38 L.Ed. 279. ". . . in the United States and Canada the doctrine is almost universal that possession for the statutory period not only bars the remedy of the holder of the paper title but also extinguishes his title and vests title in fee in the adverse occupant." 2 *Corpus Juris* 251 citing in support thereof a multitude of cases from numerous federal and state courts. Referring to the interpretation of similar statutes in the various states limiting actions for the recovery of real property, Tiffany in his work on Real Property at pp. 997–8 says: "They have, however, with but few, if any, exceptions, been construed as operating to transfer the title to the wrongful possessor, enabling him to assert his ownership in an action of ejectment, or otherwise against the whole world, including the original owner, and as rendering necessary a legal conveyance in order to revest ownership in the latter, after the lapse of the statutory period." This interpretation of the effect of the operation of the Statute of 21 James I, C. 16 has heretofore been approved by this Court, *Talo v. Poi*, No. 16-1937.

■ ■ Since the possession of the Tavais from 1903 to 1934, when permission was given by the then Tavai to Talo to enter upon the land and use it, was open, notorious, actual, visible, exclusive, continuous, hostile and under a claim of right it would follow that such possession was adverse to the Talo, assuming that the Talo owned the land. Such possession constitutes adverse possession. See 2 *Corpus Juris* 50 and *Tiffany, Real Property*, Secs. 437, 441,

66

442, 443; *Cook v. Clinton*, 64 Mich. 309, 8 A.S.R. 816; *Salavea v. Ilaoa*, No. 2-1938. Color of title has not been held to be a necessary element in adverse possession in American Samoa, such a requirement not being suitable to conditions here. Since the possession continued for a period of more than twenty years it would follow that if the Talo owned the land (which we do not believe he did, as will later appear in the opinion) such ownership passed to the Tavai at the expiration of twenty years of such possession. If necessary, the possession of Tavai Pauatu from 1903 to the time of his death about 1906 may be "tacked" to the possession of Tavai Suafala thereafter to 1923 to make up the twenty year period. *Faaafe and Una'i v. Sioeli*, No. 5-1938; *McNeely v. Langan*, 22 Ohio St. 32; *Sawyer v. Kendall*, 10 Cush. (Mass.) 241; *Rowland v. Williams*, 23 Or. 515; *Tiffany, Real Property*, 1001.

It follows from what has been said that the property in dispute should be registered as the matai land of Tavai Laufaia.

While not necessary to the decision we shall nevertheless consider the case in the light of Samoan customs as they existed prior to the extension of the jurisdiction of the United States to the Samoan Islands in 1900.

■ It is well settled that the extension of such authority did not affect private land titles in the Islands. I *Hyde International Law*, p. 235; *U.S. v. Percheman*, 7 Peters 51, 86–87; *Talo v. Poi*, No. 16-1937; *Toilolo v. Ilaoa*, No. 5-1937; *Leapaga v. Taumua L.*, No. 8-1938. Prior to 1900 the acquisition and devolution of the title to real property was necessarily governed by Samoan customs relating thereto. Those customs constituted the only possible law in force in the Islands. Since 1900 the acquisition and devolution of such titles has been governed by applicable statutes and "so much of the common law of England as is applicable and not repugnant to or inconsistent with the consti-

tution and laws of the United States, and the laws of American Samoa." Sec. 3(1) of the Codification.

Talo claimed that at a time probably long antedating the possession of Tavai Tausuai, which possession has already been alluded to, the then Talo was the owner of Laolao. No witness who gave any testimony bearing on such alleged ownership had any personal knowledge of it, all such testimony being based on hearsay or reputation originating in the dim past. There was no documentary evidence of such ownership.

■ Title to land cannot be evidenced by hearsay. There is no such exception to the hearsay rule. Nor can it be so evidenced when the hearsay is in the form of reputation. In *Howland v. Crocker*, 7 Allen (Mass.) 153, evidence that a tract of land was known as the "Barney Crocker lot" was ruled inadmissible to show title in him. In *South School District v. Blakeslee*, 13 Conn. 227, 235, the court in ruling that the reputation of a house as the property of a certain person was inadmissible to prove that it was his property very pointedly remarked that "a man's general character may be proved by reputation, but not his title to real estate." And "That title cannot be so evidenced (by reputation) is generally conceded." II *Wigmore on Evidence*, Sec. 1587.

■ This court judicially knows that land in American Samoa prior to the American occupation was, generally speaking, in the possession of its owners. Such is the historical fact and a matter of common knowledge. Therefore it would follow, in the absence of evidence to the contrary, that if it be shown that a certain piece of land was in the possession of a certain matai prior to 1900 it may properly be presumed that such land at the time of such possession was the property of such matai. That unexplained possession of land creates a presumption of ownership in the possessor is an established principle of law. "Where title to

68

land becomes material, the fact of present possession alone may serve to create a presumption of ownership; the emphasis being on the occupation or appearance of ownership and not on the documentary sources of claim; . . . ." 4 *Wigmore on Evidence*, Sec. 2515. Also to the effect that present possession of land creates a presumption of ownership, see *Cahill v. Cahill*, 75 Conn. 522, 54 Atl. 201; *Teass v. St. Albans*, 38 W.Va. 1, 22, 17 S.E. 400. In *Bradshaw v. Ashley*, 180 U.S. 59, 63, Mr. Justice Peckham speaking for the Supreme Court of the United States says:

"The question is what presumption arises from the fact of possession of real property? Generally speaking, the presumption is that the person in possession is the owner in fee. If there be no evidence to the contrary, proof of possession, at least under a color of right, is sufficient proof of title. Therefore, when in an action of ejectment the plaintiff proves that on the day named he was in the actual, undisturbed and quiet possession of the premises, and the defendant thereupon entered and ousted him, the plaintiff has proved a prima facie case, the presumption of title arises from the possession, and unless the defendant prove a better title, he must himself be ousted."

What conclusion is the court to draw as to the ownership of the disputed land from the fact that it was in the possession of Tavai Tausuai? None other than that he was the owner unless there be evidence of circumstances existing at the time of such possession, which was admittedly long before the American occupation, to overcome the presumption of title in him from the fact of his possession. We have already shown that the testimony that in the dim past Talo was the owner of Laolao cannot be considered, since such testimony was based on hearsay or reputation.

■ Talo testified that prior to the establishment of the Government the disputed land was used by Tavai Tausuai who was a son of a Talo and after him by Tavai Faaiu, a grandson of Talo Fituli. It was argued for Talo that if these two Tavais were descendants of Talos, the land which

69

they possessed was the property of the Talo. We do not believe that such is the proper inference to draw. Under the Samoan custom the matai is a species of trustee of family lands for the use and benefit of the members of his matai family. Since under Samoan customs the son of one matai may, and usually does, marry a woman from another matai family and may go, as he frequently does, to live in her family thereby becoming a member of her family instead of bringing her to live in his family, it is entirely possible that Tavai Tausuai and Tavai Faaiu, even though originally members of the Talo family became through marriage members of the Tavai family and were later made matais of that family. If there were descendants of the Talos they could have become members of the Tavai family through adoption pursuant to Samoan customs. The fact that they became matais of the Tavai family indicates that if they were not born into it they must have become members of it either through marriage or by adoption.

■ In the absence of any evidence that the then Talo gave permission to Tavai Tausuai or Tavai Faaiu to occupy the land in question or of evidence they ousted the Talo from possession we cannot conclude that the possession by them was with the permission of the then Talo or that they ousted him. The fact, if it be a fact, that Tavai Tausuai was a descendant of a Talo would give him, under Samoan customs, no right to the possession of Talo property. The right to such possession would rest in the matai of the Talo family which Tavai Tausuai was not. And the same observations can be made with reference to Tavai Faaui. That the land was Tavai land under Samoan customs prior to 1900 during such time as it was occupied by the two Tavais referred to is obviously perfectly consistent with their being descendants of Talos.

70

And the fact that Tavai Tausuai and Tavai Faaiu may have been descendants of Talos does not rebut the presumption that Laolao was the communal family land of the Tavai family arising from the fact of their possession. If it did we would have to assume that Tavai Tausuai went into possession either with the permission of the then Talo or that he ousted him. There is nothing in the testimony properly in evidence upon which to base either assumption.

It was in evidence that Talo is a matai name of Pago Pago and that under Samoan customs every matai has land. It was argued that these facts tended to show that Laolao was the property of Talo before the establishment of the Government in 1900. It could just as well be argued, therefore, that it was Tavai property or the property of any other one of the many matais whose names were connected with Pago Pago prior to 1900. It is obvious that this argument avails Talo nothing.

In view of what we have already said, we are convinced that prior to the American occupation, this land under Samoan customs was the communal family land of the Tavai family when it was in the possession of Tavai Tausuai and after him in the possession of Tavai Faaiu.

The evidence leaves no difficulty about the possession from the time of Tavai Faaiu. After him it passed to Tavai Pauatu; then to Tavai Suafala. Tavai Suafala continued in possession until he gave oral permission in 1934 to Talo, the objector, to enter upon the property and use it.

The question now arises whether after Talo has made improvements on the land and put in some plantations thereon in reliance on such license it may be revoked. Under the fact situation presented, we think it may. To hold it irrevocable would be to convert a license into an interest or property in the land. Such was not the intention of the parties.

71

A license "passeth no interest, nor alters or transfers property in anything, but only makes an action lawful which, without it, had been unlawful;" per Vaughan in *Thomas v. Sorrel*, Vaughan, 351; *Wiseman v. Lucksinger*, 84 N.Y. 31, 38 Am. Rep. 479; *Cook v. Stearns*, 11 Mass. 533.

 The fales and the cook house, although attached to the soil can be taken down and rebuilt elsewhere. The soil and climatic conditions in American Samoa are such that the pineapple plantation on the land can be removed plant by plant to other land without the loss of the plants. The same is true of the giant taro and yam plantations put in by Talo, except insofar as some of the taro and yams may have matured. Such matured plants can be dug up and used, or sold.

While there is a division of opinion on the matter the weight of authority is to the effect that an oral license, as in the instant case, despite the making of improvements in reliance thereon may be revoked. *Tiffany, Real Property*, 681. "In other jurisdictions, according to what is said to be the better rule, where there is merely a parol or implied license, neither the execution of the license nor the making of expenditures in reliance thereon, affect the right of the licensor to revoke the license so far as it is unexecuted, at his pleasure, at any time before a prescriptive right has been acquired, provided the licensee has reasonable notice and opportunity to remove his fixtures and improvements. To hold otherwise would be to override the statute of frauds and convert an executed license into an estate in land, which is going to a greater length than equity ever went under the doctrine of part performance, nor does the case involve any matter of estoppel in pais against the licensor, or render him liable to an action for damages. This rule has been held to apply, even though the licensor suffers no injury from the existence of the license and the licensee

will suffer heavy loss by its revocation." 37 *Corpus Juris* 294–5. An examination of the authorities sustains this statement from *Corpus Juris*.

In *Wiseman v. Lucksinger, supra,* the defendant had a plank drain on his lot connecting with a public sewer. For seven dollars he permitted the plaintiff, whose lot adjoined the defendant's, to construct a similar drain from his lot over the defendant's lot and connect the same with the defendant's drain. After more than 20 years the plaintiff put in a tile drain in place of the plank drain. This caused an overflow to the defendant's cellar. Defendant cut off the connection on his own land, and refused plaintiff permission to enter upon his (the defendant's) land to maintain and repair the drain. The court held that the license was revocable and that the defendant was in the exercise of his legal right in cutting the drain and prohibiting the plaintiff from entering upon his lot to repair and maintain the drain.

In *St. Louis National Stock Yards v. Wiggins Ferry Company,* 112 Ill. 384, 54 Am. Rep. 243 where defendant gave an oral license to the plaintiff to construct a railroad over the defendant's land, the plaintiff in reliance upon such license constructed the railroad at a considerable expenditure of money. The court concluded, despite the reliance upon the license coupled with the expenditure, that the license could be revoked.

The question involved in *Hodgkins v. Farrington,* 150 Mass. 19, 15 Am. St. Rep. 168, was whether an oral license to insert timbers from a building being erected on A's land into a wall on B's land adjoining could after the timbers were inserted and the building erected be revoked. Addressing itself to this question the court speaking through Devens, J., said: "It (an oral license) gives the licensee no estate or interest in the land. It excuses acts done which would be trespass, or otherwise unlawful. It is revocable,

not only at the will of the owner of the property on which it is to be exercised, but by his death, by alienation or demise of the land by him, and by whatever would deprive the original owner of the rights to do the acts in question, or give permission to others to do them; *Cook v. Stearns*, 11 Mass. 533; *Stevens v. Stevens*, 11 Met. 251; 45 Am. Dec. 203; *Clapp v. Boston*, 133 Mass. 357."

██ The Registrar of Titles will be directed to register the disputed land as the property of Tavai Laufaia in his capacity as the matai of the Tavai family. To prevent confusion in the records the land will be registered as Laolao II, since there is another tract in Pago Pago already registered under the name Laolao. Talo will have until Nov. 1, 1939 to remove his fales and cook house, his pineapple, yam and giant taro plantations from the land. He is entitled to a reasonable time after revocation within which to make such removals. See *Salley v. Robinson*, 96 Me. 474, 52 Atl. 930, 90 Am. S. Rep. 410; *Doty v. Gorhan*, 5 Pick. (Mass.) 487; *Dame v. Dame*, 38 N.H. 429; also 37 *Corpus Juris* 299. We regard such period as reasonable under the facts of this case. Since the cost of having the land surveyed was paid by Talo and will inure to the benefit of Tavai, costs still due the government will be divided as follows: $15.00 to be paid by Tavai and $10.00 to be paid by Talo. Decree accordingly.

The Court is unanimous in this opinion.