**TUIOLOSEGA of Olosega, Plaintiff**

**v.**

**VOA of Olosega (Vaitogi), Defendant**

No. 11-1918

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Mati" in Olosega]

November 19, 1941

A. A. MORROW, *Chief Justice;* PULETU, *District Judge;* and MULI, *District Judge.*

Heard at Fagatogo on October 30, 1941.

MORROW, *Chief Justice.*

On May 31, 1918 Tuiolosega filed his petition against Voa to recover possession of the land Mati in the village of Olosega alleging that he was the owner of said land and denying defendant's ownership. The case was not brought

to trial until October 30, 1941. It appeared from the evidence of Tuiolosega himself that he made no effort and did not move to have the case heard until sometime in 1941. The record on file is consistent with this evidence. With reference to getting the case to trial one part of Tuiolosega's testimony was to the effect that "when Mr. Zuberano (Clerk of the High Court) asked me about my case," the witness said "Just let it ride for a while." The ride extended for 23 years.

At the outset it should be stated that a court in reaching its decisions is governed by the facts as ascertained from the evidence and the law applicable thereto. In other words, the court first ascertains the facts and then applies the law thereto. The judges do not make the law. The power to make law rests with the Governor. Sec. 3(4) of the Codification. Should cases be decided according to the individual whims of the judges the titles, property, lives, and liberty of the Samoan people would become insecure.

The petition is for the recovery of the possession of the entire land Mati. At the trial it appeared that this tract of land is divided into two parts, one part occupied by the Tivao family, the other by Letuli of the Voa family. To the question "You do not claim the part where the Tivao people are?" Tuiolosega, while on the stand replied "No." In view of Tuiolosega's disclaimer in open court of ownership of the part occupied by the Tivaos, the Court will treat the petition as if it related only to that part of Mati occupied by Letuli.

Tuiolosega's testimony also reveals that Voa and his family began gathering the fruits of the land about three or four years after the Government was established in Manua in 1904 and that they continued to gather such fruits for "quite a few years after that . . .". These acts resulted through the years in frequent quarrels between the Tuiolosega family and the Voa family. Apparently, they

culminated in Letuli's moving onto the land about 1917. With reference to this, Tuiolosega testified as follows:—

"Q. Did you ever tell Letuli he could go on that land (Mati)?
A. No.
Q. He just moved on the land within what you claim without saying anything to you about it?
A. Yes.
Q. What condition was the land, bush or plantation?
A. All of my plantations.
Q. He just moved in and took this plantation without saying anything to you about it?
A. That is right.
Q. Were you county chief at the time?
A. I became county chief in 1917.
Q. He moved on there before you became county chief?
A. Yes.
Q. Has he lived there ever since?
A. Yes.

\*     \*     \*

Q. You just let him move on there and did not do anything about it?
A. I was objecting right along but he never take any notice of it."

In another part of his testimony Tuiolosega indicates that Letuli did not move onto the land until about 1918. Whether it was in 1917 or 1918 is immaterial.

In response to the question: "When you made no use of the land since 1918 when Letuli went on?" Tuiolosega replied "No." And again in answer to the query: "Do I understand you to say that you have not made any use of that land since about 1918?" he answered "Yes, Letuli was using the land since that time."

We are convinced from the whole of Tuiolosega's testimony that the land sought to be recovered has been in the adverse possession of Letuli at least since 1918 and that for many years prior thereto the Voa family made frequent entries upon the land and took the fruits therefrom and

140

that such entries were based upon a claim of ownership. It may well be that during these same years preceding Letuli's moving onto the land the Tuiolosega family had some plantations on it and got some of the fruits therefrom.

■ Tuiolosega's original claim of title is based purely upon hearsay testimony. None of the witnesses who testified concerning the origin of Tuiolosega's alleged title had any personal knowledge of the supposed origin which was a transfer for a consideration from witness Laolagi's grandfather to Tuiolosega's grandfather. The witnesses' information was based upon hearsay, pure tradition. We have held that title to land cannot be established by such testimony. Thus in case of *Talo of Pago Pago v. Tavai of Pago Pago*, No. 14-1938 (Am.S.) we said:—

"Title to land cannot be evidenced by hearsay. There is no such exception to the hearsay rule. Nor can it be so evidenced when the hearsay is in the form of reputation. In *Howland v. Crocker,* 7 Allen (Mass.) 153, evidence that a tract of land was known as the 'Barney Crocker lot' was ruled inadmissible to show title in him. In *South School District v. Blakeslee,* 13 Conn. 227, 235 the Court in ruling that the reputation of a house as the property of a certain person was inadmissible to prove that it was his property very pointedly remarked that 'a man's general character may be proved by reputation, but not his title to real estate.' And 'That title cannot be so evidenced (by reputation) is generally conceded.' II Wigmore on Evidence, Sec. 1587."

This same principle was applied on September 19, 1941 in disposing of the complaint of Afe regarding the award of part of the land Falesama-Tai in Olosega to Letuli by a Board of Arbitration. *Letuli of Olosega v. Faaea and Tagaloa of Olosega*, No. 8-1941 (Am.S.).

■ We think from the evidence that without doubt—and Tuiolosega's own testimony fully confirms this view—that the possession of Letuli (a member of the Voa family) since at least 1918 and probably for a year or so before, has

141

been open, notorious, actual, visible, exclusive, continuous, hostile and under a claim of title. Such possession, which continued for more than twenty years, was clearly adverse to any claims of Tuiolosega or his family. See 2 Corpus Juris 50; 2 Tiffany on Real Property (2nd Ed.) Secs. 500–504; *Cook v. Clinton*, 64 Michigan 309, 8 A.S.R. 816; *Salavea v. Ilaoa*, No. 2-1938 (Am.S.).

In *Talo of Pago Pago v. Tavai of Pago Pago*, supra, in which case was involved the ownership of the land Laolao in Pago Pago we said:—

"This Court has decided that the Statute of 21 James I, C. 16, passed by the English Parliament in 1623 limiting actions for the recovery of real property, subject to certain exceptions not here applicable, to twenty years is a part of the law of American Samoa. *Talo v. Poi*, No. 16-1937; *Leapaga v. Taumua L.*, No. 8-1938. The result of adverse possession for twenty years is to divest the true owner of his title and to vest it in the adverse possessor. *Maxwell Land Grant Co. v. Dawson*, 151 U.S. 586, 14 S.Ct. 458, 38 L.Ed. 279. '. . . in the United States and Canada the doctrine is almost universal that possession for the statutory period not only bars the remedy of the holder of the paper title but also extinguishes his title and vests title in fee in the adverse occupant.' 2 Corpus Juris 251 citing in support thereof a multitude of cases from numerous federal and state courts. Referring to the interpretation of similar statutes in the various states limiting actions for the recovery of real property, Tiffany in his work on Real Property at pp. 997–8 says: 'They have, however, with but few, if any, exceptions, been construed as operating to transfer the title to the wrongful possessor, enabling him to assert his ownership in an action of ejectment, or otherwise against the whole world, including the original owner, and as rendering necessary a legal conveyance in order to revest ownership in the latter, after the lapse of the statutory period.' This interpretation of the effect of the operation of the Statute of 21 James I, C. 16 has heretofore been approved by this Court, *Talo v. Poi*, No. 16-1937."

It follows from the application of these legal principles that if Tuiolosega or his family did have any title (and there was no satisfactory proof that he or it had) to the

part of the land Mati occupied by Letuli, such title has been extinguished through the operation of the doctrine of adverse possession for twenty years unless the filing of Tuiolosega's petition on May 31, 1918 operated to stop the running of the statute of limitations.

"While it has been held that the actual commencement of a suit is sufficient to stop the running of the statute of limitations, without any regard to, or dependence on, any after diligence of plaintiff in its prosecution, it seems to be well established that if a suit is voluntarily abandoned, discontinued, or dismissed, or is not proceeded with for a considerable period of time, the operation of the statute will not be suspended." 37 Corpus Juris 1053. Tuiolosega's own testimony heretofore referred to shows conclusively that he made no effort to have the case tried from May 31, 1918 when his petition was filed until some time in 1941. Twenty-three years of delay in prosecution does not constitute diligence. We have no hesitation in saying that under these circumstances the running of the statute was not stopped by the institution of the action in 1918. It follows, therefore, that Tuiolosega is not the owner of the part of land Mati in Olosega occupied by Letuli of the Voa family.

No adjudication is made concerning the ownership of that part of Mati occupied by the Tivaos since Tuiolosega during the hearing disclaimed ownership to that part.

It follows, therefore, that Tuiolosega's petition should be and it will be dismissed. No costs will be assessed against Tuiolosega since it appeared from the evidence that he paid costs at the time his petition was filed.