BANGOR HOUSE PROPRIETARY *versus* BROWN.

Land conveyed, as bounded  on a *highway,* extends to the  *centre* of such highway.

Land conveyed, as bounded on a *street,* existing only by designation on a plan, or as marked upon the earth, does not extend to the *centre,* but the *fee* is limited to the *side line* of such street.

| 33 | 309 |
| a89 | 70 |
| 33 | 309 |
| 96 | 194 |
| 33 | 309 |
| 97 | 157 |
| 33 | 309 |
| f105 | 497 |
| 33 | 309 |
| 106 | 103 |

With a lot, thus conveyed as bounded on *such* a street, there is also granted for the convenient use of the lot, a *right of way* in the street, in the condition in which it may be found or made by the grantee.

A dedication, by the proprietor of land, for a *highway*, can be shown only by clear indications that he *intended* to surrender it, not for the benefit of *certain persons only*, but for the use of the. *public.*

Before land, thus dedicated, can be treated as a highway, the public must have adopted it as a highway.

Such an adoption may be inferred from a common use of the land as a highway.

On EXCEPTIONS from *Nisi Prius*, TENNEY, J.

TRESPASS for tapping the plaintiff's aqueduct and drawing water therefrom.

In 1829, the proprietors of a tract of land, in the city of Bangor, caused one Bradley to draw a plan of it and to designate streets and building-lots thereon. They then recorded the plan in the registry of deeds.

Soon after the plan was made, one of said streets, now called Centre street, was built by said proprietors, but it has not been kept in repair, and only one part of it is used as a street.

The lot No. 17, bounded southerly on Centre street, "as laid down on said plan," was conveyed in 1832, by the proprietors to Elliott Valentine. A part of No. 17, and bounded on the street, is now owned by the defendant under that conveyance, and his dwellinghouse stands upon it. A portion of Centre street, remote from the defendant's house, and that portion only, has been laid out and accepted by the city, as a public street.

In 1834, the plaintiffs laid an aqueduct, running along in Centre street, at the depth of six feet below the surface, to the cellar of their hotel.

The evidence proved that the defendant cut the aqueduct pipe, lying within the northern half of the street, and in front of his own house.

The defendant contended, that as his premises were bounded upon the street, his title extended to the centre of it, and gave him a right to tap, and even to remove the aqueduct. The

Judge ruled that the defence was not made out, and the defendant excepted.

*McCrillis* and *Crosby*, for the defendant.

It has been settled for centuries, that a grant of land, bounded on a highway, carries the fee to the centre of the highway. The principle was decided in *Tyler* v. *Hammond*, 11 Pick. 213, but that case was referred to in *Johnson* v. *Anderson*, 18 Maine, 76, and not regarded by the Court as sound law. In 3d Kent's Com. 433, (6th ed.) *Johnson* v. *Anderson* is cited, among other authorities, in support of the doctrine that a grant of land, bounded upon a highway or river, carries the fee to the centre of the highway or river, and the single case of *Tyler* v. *Hammond*, is cited in opposition. A distinction has been suggested between *public* ways and *private* ways. Though the law is established, that the conveyance of land bounded on a *public* way carries the fee to the centre of the way ; doubts have been expressed whether a similar result would follow in case of a conveyance of land bounded on a *private* way. We deny that Centre street is a private way, or was, at the time the proprietors conveyed to Valentine the lot now owned by the defendant. The authorities abundantly establish the position that highways may be created by dedication. The principle was denied for the first time in *Hinckley* v. *Hastings*, 2 Pick. 162, where the Court say "it is not known that, in this Commonwealth, a way has ever been made by dedication." This decision overruled the common law as, from time immemorial, it had been understood and acted upon in England. The subject subsequently received a full and elaborate discussion in *Hobbs* v. *Lowell*, 19 Pick. 405, and the case of *Hinckley* v. *Hastings* was overruled. Although the Court were not unanimous in their opinion, the eminent character of the Chief Justice, and of the members of the Court, who concurred with him, and the great attention they gave to the subject, entitle the case to be respected as a decisive authority. The current of decisions is now uniform, and the principle that highways may be established by dedication, is as well settled as is any principle of the law.

The great question has been, what facts are necessary to create the presumption of a valid dedication. In the earlier cases, lapse of time was considered an essential ingredient. As to the length of time necessary to create the presumption, the different cases exhibit almost as many different opinions. In some a use of six years was considered sufficient, and in others a use of twenty years was required. It will be perceived that the point to be arrived at is, the intention of the owner of the land. This can be ascertained by positive acts, as well as by acquiescence in the use of land as a road. Positive acts, if they are unequivocal and decisive in their character, afford a better indication of the owner's intention than mere silence and acquiescence, and accordingly the earlier cases have been overruled, and it is now settled that a dedication may be presumed from such circumstances as indicate assent of the owner of the soil. *Woodyer* v. *Haddon,* 5 Taunt. 137 ; *Cincinnati* v. *White,* 6 Peters, 431 ; *Livingston* v. *Mayor of New York,* 8 Wend. 85 ; *Wyman* v. *Mayor of New York,* 11 Wend. 486, opinion by Senator Sherman ; *Hunter* v. *Trustees of Sandy Hill,* 6 Hill, 407 ; *Hobbs* v. *Lowell,* 19 Pick. 405 ; *State* v. *Marble,* 4 Iredell, 405 ; 3 Kent's Com. 431 and 451, (6th ed.) ; *Trustees of Watertown* v. *Cowen,* 4 Paige, C. R. 410. We have seen that the proprietors, in the year 1829, laid out certain land in the city of Bangor into lots and streets ; that they caused a plan to be made of the survey and recorded in the Registry of Deeds ; that in 1829 they built the streets designated upon the plan, and opened them to public use ; and in 1832 conveyed the lot now owned by the defendant, bounding it on Centre street. Can a case be imagined where dedication is more fully and satisfactorily proved ?

C. J. PARKER, in the case of *Hobbs* v. *Lowell,* says, " the fitness and utility of the doctrine of dedication are recognized as peculiarly applicable to this country, where, in most of the cities, thickly settled towns, and villages so rapidly springing up, the right of the public to the streets and highways, rests almost invariably upon this foundation."

In the case now on trial, the proprietors built the street, and when selling, bounded the lots upon it. The street was held out as an inducement for people to purchase the lots. The inference is clear that the proprietors intended to dedicate the street to the public use.

But even if Centre street were a private way, the effect of the conveyance is precisely the same as though it were a public way. Why is it that the conveyance of land bounded on a public highway is held to carry with it, as parcel of the grant, the fee to the centre of the road? Because the law presumes, that the grantor does not intend to retain his interest in the road after parting with all his title to the adjoining land. The ownership of the fee can be of no advantage to him, and is of vast benefit to his grantee. Apply this reasoning to the case before the Court. Can it be presumed that the proprietors, after laying out and building streets, intended to reserve to themselves the fee of the streets, when they parted with all their interest in the adjoining land. The streets could never be shut up by them and they could have at most but a nominal interest. The inference of law is as strong and absolute in the one case as in the other. 4 Cowen, 543; 8 Wend. 85.

The defendant then owning the fee where the aqueduct was laid in front of his house, and the plaintiffs having shown no rights or easements there, he had the right to remove or cut the pipe at his pleasure.

*Rowe* and *Bartlett*, for the plaintiffs.

SHEPLEY, C. J. — An aqueduct, owned by the plaintiffs appears to have passed through a street, formerly called Centre street, in front of the defendant's dwellinghouse, nearer to it than the centre of the street, and about six feet below the surface of the earth.

A lot of land numbered seventeen, a part of which constitutes the defendant's house lot, was conveyed by the owners to Elliott Valentine, on September 28, 1832, bounded "southerly on Centre street, there measuring 120 feet," "as the same

is laid down on a plan drawn by Zebulon Bradley, in December, 1829." The title of the defendant is derived from Valentine.

The owners of land, including this lot, caused Bradley to draw a plan thereof in December, 1829, and to designate upon it building lots and streets. They soon afterwards caused Centre street to be prepared for use as a street or way.

As the law has been established in this State, when land conveyed is bounded on a highway, it extends to the centre of the highway; where it is bounded on a street or way existing only by designation on a plan, or as marked upon the earth, it does not extend to the centre of such way.

The occasion of such difference in effect may be ascertained. The owner of land, who has caused it to be surveyed and designated as containing lots and streets, may not be able to dispose of the lots as he anticipated, and he may appropriate the land to other uses; or he may change the arrangement of his lots and streets to promote his own interest, or the public convenience in case the streets should become highways. He does not by the conveyance of a lot bounded on such a way hold out any intimation to the purchaser, that he is entitled to the use of a highway to be kept in repair, not at his own, but at the public expense, for the common use of all. While he does by an implied covenant assure to him the use of such designated way in the condition in which it may be found, or made at his own expense. By a repurchase of that title, the former owner would be entitled to close up such way, as he would also by obtaining a release of the right of way.

There is no indication in such cases of an intention on the part of the grantor to dispose of any more of his estate, than is included by the description, with a right of way for its convenient use.

When a lot conveyed is bounded on a highway expected to be permanent, the intention to have it extend to the centre of it is inferred, (among other reasons noticed by this Court in former cases,) from the consideration that the vendor does not

convey or assure to the vendee a right of way, the law affording him in common with others a more permanent and safe public way, to be kept in repair at the public expense. The vendor not being burdened by an implied covenant, that the vendee shall have a right of way, has no occasion to retain the fee of the highway for that purpose. Hence arises one motive inducing him to convey all the rights, which he can convey to land covered by the highway.

In argument for the defendant it is insisted, that Centre street at the time of the conveyance had become a highway by dedication of the owners of the land.

It might be sufficient to observe, that such a position does not appear to have been presented at the trial, for decision by the jury or for instruction by the Court.

Without insisting upon this, the testimony presented in the bill of exceptions does not sustain the position.

If an owner of land should cause it to be surveyed into lots and streets, and a plan thereof to be made, and should also cause the streets to be made convenient for use, and continue to keep the land enclosed as his own property, it would not be contended, that a dedication of it to the public could be inferred from these acts. There must be some act of the owner, from which it can be clearly inferred, that he intended to surrender it for public use, and not for the use of certain persons only. The simple facts, that a person pursued such a course respecting his land, and that he opened a way for the use of a purchaser of a lot, would not, alone considered, authorize an inference that it was dedicated to the public for common use. There should be some evidence, that it was generally used with his knowledge, as public convenience might require, to authorize such a conclusion. Nor could the owner compel the public to accept and adopt such streets as highways. There should be evidence that they had been commonly used to authorize an inference, that they had been accepted as public ways.

In this case, there is not only no evidence that Centre street at the time of the conveyance of the defendant's lot to Valen-

tine had been used as a public way, but there is evidence, that it was not kept in repair, and that part of it only is used as a street. *Exceptions overruled,*

*and judgment on the verdict.*