CHAUNCEY GOODYEAR *vs.* MALACHI SHANAHAN.

*M* in 1801 conveyed to *B* a piece of land of "about seven acres," bounded west on a highway. In 1824 the Farmington canal was constructed along the westerly side of the tract, the center of the canal being substantially coincident with the east line of the highway. In 1836 *B* conveyed the land to *W*, describing it as the land he bought of *M*, containing about seven acres, and bounded west on the Farmington canal. The canal had been since abandoned,

. but it was then in operation and the reversionary interest in the land occupied by it was regarded as of no real value. Held that the west line of the land thus conveyed was the center of the canal and not its east bank.

Such an expression in a deed is to be so interpreted as to give effect to the inten· tion of the parties.' In ascertaining this intention the situation of the property and the surrounding circumstances are to be considered in connection with the language of the deed.

The fact that one of the heirs of *B* was now claiming to own the strip between . the east bank of the canal and the highway, held to be of no pertinence.

EJECTMENT; brought to the Court of Common Pleas of New Haven County, and tried to the court on the general issue before *Robinson, J.* The court found the following facts:

The premises in question are a part of a tract of land in the town of New Haven which was conveyed by warranty deed December 2d, 1801, by Eli Mix to Stephen Ball, and in the deed is described as follows:

"A certain piece of land situated in said New Haven, containing seven acres, be the same more or less, and is bounded south on William Love's land, north on highway, east on Abraham Bradley's land, west on highway."

In the year 1824 the Farmington Canal Company had constructed and put in operation their canal along the west border of this land, and at the part thereof in controversy the canal was partly on this land and partly on the highway, the highway line running not far from the center of the canal. The canal was abandoned in 1848.

On the 10th of March, 1836, Stephen Ball conveyed to Nathan C. Whiting the whole, or a part, of this tract of land, describing it as follows: "About seven acres, more or less, being the same which I bought of Eli Mix, bounded westerly by the Farmington canal, north by land formerly owned by Gen. David Humphrey, deceased, easterly by land of Dr. Eli Ives, and southerly by land of the heirs of William Love, deceased."

November 18th, 1842, Nathan C. Whiting conveyed to Benjamin M. Sherman the whole, or a part, of the tract, describing it as follows: "Bounded north by the heirs of Humphreys, deceased, west by Dixwell street, south by Hoff· man street, east by land formerly owned by Dr. Eli Ives."

June 20th, 1843, Benjamin M. Sherman conveyed to Chauncey Goodyear, the plaintiff, the whole, or a part, of the tract, describing it as follows: " Bounded north by land of the heirs of Humphreys, deceased, west by Dixwell street, south by Hoffman street, east by land formerly owned by Dr. Eli Ives."

November 10th, 1846, Chauncey Goodyear conveyed to the New Haven & Northampton Company a part of the land, describing it as follows: " North on land of the Humphreys heirs, east on my own land, south on land formerly owned by Henry W. Edwards, but now owned by the said New Haven & Northampton Company, and west on the Farmington canal, and containing about one acre and seven-tenths."

February 7th, 1873, the railroad company conveyed to said Goodyear a part of the tract by him conveyed to them, describing it as follows: " Northerly by Goodrich street, southerly by land of Henry Munson, trustee for Jacob A. Tyler, westerly by land of said Goodyear, and easterly by land this day quit-claimed to said corporation by said Goodyear, from which it is separated by a line drawn parallel with, and fifty feet distant westerly from, a line drawn midway between the iron-rails of the track of the railroad of said corporation."

The north line of Goodrich street is substantially the same line as the southerly line of the land of the Humphrey heirs. The southerly boundary, " by land of Henry Munson, trustee," is below the land of " heirs of William Love," or, its equivalent, " Hoffman street." The land referred to as "westerly by land of said Goodyear" is the land formerly of the " heirs of William Love," which the plaintiff owned February 7th, 1873. A further westerly boundary, on Dixwell street, was omitted by mistake.

That portion of the original Stephen Ball tract adjoining Dixwell street, which was afterwards substantially used by the Farmington Canal Company, was about four hundred and ninety-eight feet long, and seventy feet in width at one end and ninety feet at the other.

Stephen Ball died in the year 1842, leaving a will in which this tract of land was not mentioned, but in which Mary Ball, John Ball, and Frederick Ball were made residuary devisees

and legatees.   In April, 1857, Frederick Ball gave a quit-claim deed of the land lying west of the east line of the old canal, and including the demanded premises, to Leverett Alling.   In October, 1867, the widow of John Ball quit-claimed the same premises to Alling, and through the heirs of Alling the defendant claimed title by deed dated May 10th, 1873, under which deed the defendant fenced in and took possession of the premises in dispute.               . .

The plaintiff claimed that the legal effect of the deed from Stephen Ball to Nathan C. Whiting was to convey to Whiting the entire tract conveyed to Ball by Mix, and that the bound-ary on the canal was at the point in question a boundary on Dixwell street.   The defendant claimed that the Ball deed bounding Whiting on the canal bounded him on the east edge of the tow-path on the east bank of the canal.   The court sustained the claim of the plaintiff and held that the legal title to the land in dispute was vested by the terms of the deeds in the plaintiff.

The plaintiff testified that the deed of February 7th, 1873, included the demanded premises, and that he owned at the date of the deed a strip of land two hundred feet long lying between the land of the New Haven & Northampton Company and Dixwell Avenue, north of the land of H. Munson, trustee, and that this was the land referred to in the deed in the boundary described as "west on the grantee," a further boundary of "west by Dixwell Avenue " having been omitted by mistake.

On cross-examination he was asked if the widow of one of the Ball heirs did not claim to own this two hundred feet strip. This question was objected to, the plaintiff only claiming from the above evidence to identify the land referred to as bounded "west on the plaintiff," and that the real ownership of the land was immaterial, so long as the two hundred feet strip was the land referred to as bounded west on the plaintiff.   The question was excluded, and exception taken.   And the defend-ant offered no evidence to show, and made no claim, that there was any other land answering to the call of "west on land of the plaintiff," save this strip of two hundred feet, and

offered no evidence to show that the Ball heirs did in fact own this strip.

Upon these facts the court rendered judgment for the plaintiff, and the defendant moved for a new trial for errors in the rulings and decision of the court.

*S. E. Baldwin*, in support of the motion.

1. As the canal was in the adverse possession and use of the canal company in 1836, although at that time the entire interest in the land covered by it was in Ball, a deed of his title to that land would have been void, under the statute as to pretended titles, and to give one would have been a penal offence. Such a conveyance, therefore, is not to be presumed; and the boundaries of the deed given do not assume to go beyond the line of the canal. *Bishop* v. *Seeley*, 18 Conn., 389. Had Ball granted to the canal company by deed the use of the land occupied by the canal, the result would be the same; for it would not be presumed that he intended to grant to Whiting his then seemingly remote interest by way of a reverter, in the contingency of the abandonment of the canal. *Sherwood* v. *Waller*, 20 Conn., 262, 270. This is not a case of an exchange of quit-claims between adjoining proprietors, as in *Agawam Canal Co.* v. *Edwards*, 36 Conn., 501. In such a case, convenience may require an intermediate canal or ditch to be treated as belonging half to each. But in the present case the canal was bounded on both sides, in part at least, by Ball's land, as he owned the fee of half the highway, and the deed was made to one who had no previous title. The plaintiff's deed in 1846 to the railroad company, bounding them "west on the Farmington canal," shows that he then put the same construction upon his title, which we do now.

2. The plaintiff, being bound to prove a legal title in himself, must fail, even if the western boundary in the Ball deed to Whiting ran to the highway; for then the railroad company acquired and still holds the title by its deed of 1846, which contains the same western boundary. Its quit-claim to the plaintiff, in 1873, does not purport to bound him on Dixwell street. The court has indeed found that such a boundary

was intended as to a part of the land, and was omitted by mistake. We submit that such a mistake could only give the plaintiff an equitable right to have his deed reformed, which is not available collaterally in an action against a third party counting on a *legal* title. In an action brougnt to reform the deed, it might perhaps be shown that the omitted boundary, if any, was "northerly in part by land of Stephen Ball's heirs." This was an inquiry which we were not prepared to go into on the trial of an action of ejectment, and the finding, being of a matter not within the issue, is therefore of no avail.

3. If the testimony as to the mistake in the western boundary in the deed last mentioned was proper, we ought to have been allowed to contradict it. If we could have shown on cross-examination that the land north of that of H. Munson, trustee, was claimed by Mrs. Ball, generally known as hers, and known by that name to the railroad company when the deed of February 7, 1873, was drawn, and that the plaintiff had in fact no title to it, it would have tended to show that the deed in question did not apply to the *locus in quo*, and to meet the testimony as to the mistake; and would have made it apparent that the deed was too uncertain to convey any actionable title.

*J. W. Alling* and *R. S. Pickett*, contra.

CARPENTER, J. This is an action of ejectment. In 1801 the *locus in quo* was owned by Eli Mix, and by him conveyed to Stephen Ball, describing it as bounded west by a highway, which is now Dixwell street. In 1836 Stephen Ball conveyed the property to one Whiting, describing it as follows: "About seven acres, more or less, being the same which I bought of Eli Mix, bounded westerly by the Farmington canal." At that time the Farmington canal, which was constructed in 1824, occupied the westerly portion of the land, and also a part of the highway, the easterly line of the highway extending to the center of the canal. The principal question in the case is, what is the proper construction of the phrase in Ball's

deed to Whiting, "bounded westerly by the Farmington canal"?

The Court of Common Pleas construed it as extending to the center of the canal, contrary to the claim of the defendant, who insisted that the premises conveyed were bounded on the east edge of the tow-path on the east bank of the canal.

This deed should be interpreted so as to give effect to the intention of the parties. *Agawam Canal Co.* v. *Edwards*, 36 Conn., 476. We must look to the deed, the situation of the property, and the surrounding circumstances, for the purpose of discovering what that intention was.

The deed purports on its face to convey all the land which the grantor acquired by his deed, "being the same which I bought of Eli Mix." The lot is also described as containing "seven acres, more or less." In the Mix deed it is described as "seven acres, be the same more or less." Should the canal land be excluded, as the defendant contends, the quantity of land would be about six acres.

The language of the deed indicates so clearly an intention to convey all the land, that we ought to require pretty strong reasons to induce us to give it a contrary construction. Such reasons do not exist. It is conceded that he did convey all except that which was subject to the easement of the canal company. The company had no title to the fee; they simply acquired an easement. The fee to the center of Dixwell street remained in Ball. There is nothing to indicate a purpose to retain the land subject to the easement and to sell the rest of the land. We can discover no sufficient motive for such a purpose. The reversionary interest could not at that time have been considered of any practical value, the canal then being in operation, though since abandoned. The presumption therefore is that he intended to convey it with the unincumbered portion.

As a general rule, a deed bounding on a canal carries the title to the center of the canal. *Agawam Canal Co.* v. *Edwards*, 36 Conn., 476, and cases there cited. We see nothing in this case making it an exception to the rule.

Whiting therefore acquired title to the center of the canal, which was the same, or nearly the same, as the east line of Dixwell street.

The subsequent deeds from Whiting to Sherman, and from Sherman to the plaintiff, are consistent with this view, for they both bound the property westerly on Dixwell street.

Add to all this the fact that Stephen Ball died in 1842 and made no mention of this property in his will, and that his heirs and legatees made no claim to it for fifteen years afterwards, and then only as one of them gave a quit-claim deed of his interest therein, and it seems reasonably certain that the court below correctly construed the deed in question.

It seems that in the year 1846 the plaintiff conveyed to the New Haven & Northampton Company a part of said tract of land, and that the railroad company, in the year 1873, re-conveyed to the plaintiff a part of the land so conveyed by him to them. In the latter deed the land is bounded "westerly by land of said Goodyear." The plaintiff testified that his land lying on the west was a strip of land two hundred feet long. On the cross-examination he was asked if the widow of one of the Ball heirs did not claim to own this strip. This was objected to by the plaintiff and the court excluded it.

We do not perceive the importance nor even the relevancy of these deeds. But if relevant, the ownership of the two hundred feet strip cannot be material, especially as it was only incidentally referred to in identifying the land described in the deed. It is manifest that the plaintiff supposed he owned it, as he swore to it; and the fact, if it be a fact, that some one else claimed to own it, cannot be material. It does not appear that there was any evidence tending to show, or any claim, that the land conveyed by that deed was other than that claimed by the plaintiff. We therefore discover no error in this ruling.

A new trial must be refused.

In this opinion the other judges concurred.