JAMES A. CAHILL ET AL. *vs.* MARY CAHILL ET AL.

Third Judicial District, New Haven, January Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In ejectment the plaintiff must recover, if at all, by proof of a legal title in himself, and not by the weakness of the defendant's title.

The existence of a legal title cannot be presumed from mere possession for less than the statutory period ; but evidence of possession, and of acts of ownership, is admissible as secondary evidence, to corroborate and support other evidence tending to prove that a conveyance had in fact been made to the person in possession.

Where the question of title arises between the representatives of a wife and those of her husband, and the representatives of the wife have endeavored to establish by direct proof the existence of a deed to her, and to prove her possession as corroborative of such direct evidence, it is error for the trial court to exclude evidence that the husband had never exercised any acts of ownership over the land.

Argued January 22d—decided March 4th, 1903.

ACTION to recover the possession of land, brought to the Superior Court in New Haven County and tried to the court, *Elmer, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiffs. *Error and new trial granted.*

The facts are sufficiently stated in the opinion.

*Robert L. Munger,* for the appellants (plaintiffs).

*Frederick W. Holden* and *William L. Bennett,* for the appellees (defendants).

PRENTICE, J. Richard and Julia Cahill were husband and wife, married prior to 1877. The plaintiffs are their children and claim in the latter's right and as her heirs at law. Julia died in 1885. In 1887 Richard married, for his second wife, the defendant Mary Cahill. Richard died in 1901, leaving surviving him his last named wife, and leaving also a will which was duly probated. The defendant McMahon

is the administrator of his estate *cum testamento annexo*. The will gave his widow, Mary, the life use of his estate, and the defendant McMahon the remainder in trust for certain persons and purposes. The defendants thus claim through Richard under the will. The record title to the property in question was never in either Richard or Julia, but stood in other persons, the last conveyance being to Wallace and Sons, a corporation, which received it in 1873. No deed to either of said couple was shown in evidence, nor was proof of a copy or contents of any such deed produced. The conduct of the case assumed, although the fact is not expressly found in that form, that in some manner between them they were in possession of the land and exercised dominion over it during the last twelve years at least of their married life. The plaintiffs claimed that the wife was so possessed in her own right, independently and apart from her husband; the defendants, that the husband was. The plaintiffs claimed to be entitled to recover possession in this action (1) upon a title shown in their mother and therefore in themselves, and, failing in that, (2) upon their possessory rights in succession to their mother dying possessed.

With respect to the last claim the court very properly ruled in accordance with the defendants' contention, that the plaintiffs could not recover without first showing a legal title. The court adopted as its ruling the language of Judge Swift in his Digest, Vol. 1, p. 507, to the effect that the plaintiffs must recover, if at all, by the strength of their own title and not by the weakness of the defendants', and that it behooved them not merely to show a better title than the defendants, but a legal title. The plaintiffs concede the correctness in general of this principle invoked by the court, but ingeniously contend that it is not a complete statement of the law. Their argument is based upon the existence in the old English common law of certain possessory real actions, and especially the writ of assize, under which an heir or devisee, whose ancestor or devisor had died seized of an inheritance, was put into possession thereof as against a stranger who had intervened before the heir or devisor had

entered and himself made entry and obtained possession of the freehold. 3 Blackstone's Comm. 184. It is completed by the *dictum* from Swift's Digest, to the effect that our action of ejectment comprehends and answers the purpose of all the old common law real actions, and the further *dictum* that, like writs of entry and assize, it will lie for possessory rights. 1 Swift's Digest, 507. The trouble with this argument is that these *dicta* from Judge Swift do not comport well with his later statements upon the subject, of which the passage already referred to is an example, and is in direct antagonism to the repeated utterances of this court. *Talcott v. Goodwin*, 3 Day, 264; *Tracy* v. *Norwich & W. R. Co.*, 39 Conn. 382; *Bristol Mfg. Co.* v. *Barnes*, 54 id. 53. In the second of the cases cited, we said (p. 394): "We however ought to say that we regard it as elementary law in Connecticut that in this action of disseizin or ejectment the plaintiff must recover, if he recover at all, by the strength of his own title. Ample remedies are provided by actions of trespass and by proceedings for forcible entry and detainer for the disturbance of quiet possession, and we see no good reason for any change or mitigation of the familiar rule in respect to proof of title in ejectment." The court did not err in ruling as it did.

The plaintiffs claimed to have satisfied the rule adopted by the court, and to have shown a legal title. They sought to prove by direct evidence the existence of a deed which had become lost. The court found that they did not succeed in this regard. For this finding, assuming that the issue was to be determined upon direct proof alone, the evidence furnished ample justification. At the eleventh hour, but in time perhaps, they claimed to have established a title by adverse possession. The court found otherwise, as it was clearly bound to do upon the evidence. The plaintiffs, evidently foreseeing these results, did not stop here in their claims. They made, first, the broad claim that having shown possession in their mother at her death and for a period of years prior thereto, the court should, in the absence of countervailing testimony, have presumed and found that she had

title. This general claim, which has been urged upon us the most vigorously of all the plaintiffs' many claims, was made in the court below, and here, in several forms, to wit: that Mrs. Cahill's possession was sufficient evidence of title, that therefrom a lawful grant should be presumed, that her possession and repeated acts of ownership were to be presumed to be lawful and pursuant to a legal title, that such possession would create a presumption that she was the legal owner, that not only the existence of a deed but all the essentials of a valid one would be presumed, that this evidence established a *prima facie* title which was good and sufficient until overthrown, etc. This claim, in whatever form propounded, was not well made.

The subject of presumptions of a grant from possession had an exhaustive discussion in *Sumner* v. *Child*, 2 Conn. 607. It was there decided that a grant of a corporeal hereditament would never be presumed from possession, however long continued; the whole subject, so far as corporeal hereditaments were concerned, being regulated by the statute limiting the right of entry. The court was far from saying, as we shall have occasion to see later, that a presumption arising from possession and acts of ownership could never be of help in establishing a title. What it did say, was that such a presumption could not of itself have the operative effect of creating or establishing a title; that a title could not be presumed therefrom which would have the force and effect of a title proven. So it is that a bare presumption of a title thus made cannot satisfy the requirements of a rule which prescribes that a plaintiff in ejectment must recover by the strength of his own legal title shown and not by the weakness of his adversary's. Were it otherwise, we should have a rule which was no rule. For what would it profit to say that an ejectment plaintiff may not recover upon proof of a bare possessory right, but must show a legal title, if in the same breath we should say that a legal title might be inferred from mere possession?

The true office of a presumption from possession and acts of ownership, and its use in proof of title, is clearly indicated

in this case of *Sumner* v. *Child*, 2 Conn. 607. The possession and acts of ownership may with other circumstances be proven to perfect the evidence of title. The possession and acts are admitted as secondary, corroborative evidence of an actual conveyance, or of some accompanying requisite of which the original and best evidence is lost. The admission of this evidence assumes the theory of an actual conveyance, as well as the existence of other evidence of a different character rendering it probable that such a conveyance was made. It is received as one piece of evidence which, with other testimony, tends to prove that a conveyance in fact was made, and to enable the trier to find, from the whole evidence, such conveyance in fact. The evidence in question is not received for the simple purpose of creating a presumption which should of itself have operative effect. The presumption to be derived from the evidence is one for evidential effect; that is, it is to be weighed and considered in connection with other testimony, and the presumptions and inferences therefrom in its bearing upon the ultimate question of fact to be determined, to wit: the question of a conveyance in fact. This distinction which the case makes is an important one, and important in its bearing upon the case at bar.

The plaintiffs, as we have seen, endeavored to establish by direct proof the existence of a deed to Mrs. Cahill. In their claims to the court they not only asked that this fact be found upon such proof, but also that the presumption to be derived from her possession and repeated acts of ownership be weighed in connection with the other facts established, and, upon the strength of the conjoined proof, the fact of her ownership, and that such ownership rested upon a valid deed to her, be found. The request, thus made in most explicit terms, was fairly within the rule laid down in *Sumner* v. *Child*, 2 Conn. 607, and so far, therefore, their contention was well made.

The court, however, found as a fact that from August, 1873, until the death of Julia, Richard was in possession of the land and, of course, by inference, that Julia was not. This finding of fact, if it stands, accomplishes a complete demolition

Cahill v. Cahill.

of the plaintiffs' contention. If Julia was not in possession, no presumption from possession could arise in her favor. The finding must stand, unless it was made without evidence, as it clearly was not, or some error of law or some incorrect ruling upon the admission or rejection of testimony may have influenced it.

It is urged upon us that the finding was the result of a legal misconception as to the relation of a husband, married before 1877, to the realty of his wife. A portion of the record is pointed out as indicating a probability at least that the finding was made upon the theory of law that possession of a wife's lands necessarily enured to the husband. This claim the finding effectually negatives.

There remains to be considered a ruling upon the admission of testimony, to which the plaintiffs attach much importance in this connection. Plaintiffs' counsel sought to prove that Richard had never done anything upon or about the land in dispute; in other words, that he had never exercised acts of ownership. Evidence to this effect was excluded.

We see no escape from the conclusion that here was harmful error. The plaintiffs sought to prove that Mrs. Cahill was possessed of the property of and for herself and altogether apart from her husband, and that her husband by refraining from all manner of acts appropriate to ownership— whether in his own right or in the right of his wife—indicated the true relation to the property of the parties, between whom, it is to be borne in mind, the question was. Such a situation as claimed might exist, and the plaintiffs, if they could prove it, were entitled to the benefit of it to enforce and emphasize their contention as to the presumptive existence of the deed sought to be established. Whatever situation the acts of the parties tended to disclose, the plaintiffs were entitled to the benefit of it upon the question of possession, which the court directly determined, and thus indirectly upon the question of title. The plaintiffs sought to show that Mrs. Cahill had always dealt with the land as peculiarly her own property, and that her husband had never acted as one having any rights therein. The evidence excluded was clearly

not immaterial, as ruled. The court has found in favor of the possession of the husband. As a part of the evidence bearing upon the question was ruled out, the court erred and to the plaintiffs' manifest injury.

We are further impressed in a study of the finding with the conviction that the court misconceived the real nature of the particular claim we have been discussing. That is perhaps not altogether strange, since so many claims in so many forms were made, and the true basis of claim perhaps little emphasized. The court seems to have confused the claim arising from possession and acts of ownership, with the principles of adverse possession. It is quite evident that the fact of possession was regarded as important only in connection with a fifteen years' continuance and an adverse character. The plaintiffs' claim had no relation to a conclusive presumption such as fifteen years' adverse possession creates. It related to a rebuttable presumption only, and one which was of an evidential character merely. *Sumner* v. *Child*, 2 Conn. 607. It seems quite clear that in this way also the plaintiffs did not obtain the full benefit of their rightful claims of law.

There is error and a new trial is granted.

In this opinion the other judges concurred, except HAMERSLEY, J., who dissented.

HAMERSLEY, J. (dissenting). The plaintiffs were bound to prove that Julia Cahill owned and possessed the *locus* at the time of her death. This was essential to establish that legal title in the plaintiffs, without which they cannot recover.

Property may be acquired through any kind of lawful conveyance from its owner. This is the principal, and for the great mass of property the only, mode under our law of acquiring ownership. The fact of conveyance may be established by any appropriate evidence, and involves proof of the person who made the transfer, his ownership of the property, and the validity of the transfer as made. Where the con-

Cahill v. Cahill.

veyance is by writing, and especially where the law requires it to be by writing, it must be proved by the production of the original writing. When the writing has been lost, its existence and contents may be proved by relevant, secondary evidence.

As ownership draws after it possession, and possession, especially of personal property, is often a badge of ownership, possession may become a relevant fact in proving the existence and contents of such writing. It may be that all evidence of a conveyance, primary or secondary, is wanting, and the possessor holds property without a conveyance from any one. For some cases of this kind the law provides other modes of acquiring property, viz, possession and user, which is not by virtue of another's right, from time immemorial; or such possession for a fixed period unbroken and unchallenged. The latter mode of acquisition is confined mainly to land; the former mainly to intangible rights in property, generally described as easements. Property in these rights may be acquired by prescription as well as by grant. The property is deemed to originate in a grant : by its very nature it is created as property through the assent, voluntary or compelled, of the owner of the tangible thing it burdens. Ownership of the easement is acquired through a valid grant, whether recent or ancient, but such ownership may be acquired through possession from time immemorial as truly and as fully as by a valid grant. This mode of acquisition may rest in part on the effect of occupancy, which, as to movables, is the foundation of separate property rights ; but some support is to be found in the elementary principle of jurisprudence which forbids the litigation of claims unsupported by facts within the memory of man ; the length of this period has fluctuated, but is now for the most part an arbitrary term. Acquisitive prescription is illustrated when one prescribes in a que estate, but for the most part it is not used in the English law in its direct form ; its substance is secured through a legal fiction. Instead of asserting an ownership acquired by immemorial usage or possession, the owner is permitted to assert an ownership acquired by some

indefinite and non-existent grant, and the facts which establish his acquirement of ownership by possession, are treated as conclusive proof of some grant which is not proved, and in most cases cannot be proved, because it never existed. Such a legal fiction does not alter the substance of things. In every such case the ownership is, in reality, acquired through possession, and is not acquired through a grant. Possession, as a mode of acquiring property, establishes ownership, when as an evidential fact it is wholly incompetent to prove an ownership acquired by grant. It happens in some cases that evidence is introduced tending to prove the existence of an actual, particular grant, as well as evidence tending to support the acquisition of ownership through possession. Such possibility has naturally led to some confusion between the force of possession, as a mode of acquiring ownership, and the evidential value of possession merely as a fact which may or may not become relevant or material in proving an actual and particular grant. The distinction, however, is real and important.

A sues B for trespass in crossing his land. B attempts to establish two defenses: one, ownership of a right of way acquired through user from time immemorial (now provable by adverse possession for fifteen years, or its equivalent, an indefinite and fictitious grant conclusively presumed from a possession from time immemorial); and the other, ownership of a right of way acquired through a grant from A to B, made ten years before the bringing of suit. User or possession of a right of way for fourteen years is proved. Some evidence is produced tending to prove a grant of the way claimed, etc., made by A to B ten years before, and the loss of the deed. The court charges the jury, as bearing on the first defense, that if B has proved the requisite possession of a right of way for fifteen years, his ownership is established, but if he has proved such possession for fourteen years only, his ownership is not established; and, as bearing on the second defense, that if the evidence admitted as relevant to the fact of a deed made ten years before by A to B, granting the right of way, satisfies the jury that such a grant was

made, B has established his ownership by actual grant, although the deed has been lost, and that the fact that B actually used the way at the time of the alleged grant and afterwards, might be considered, so far as that fact might be relevant to the actual making and terms of the alleged grant. Such a charge might be substantially correct, but it would be incorrect if the court should further charge that if the jury cannot find a possession for more than fourteen years, and are not satisfied that A made a grant ten years before, by the evidence relevant to that fact, they may consider the evidence of possession for fourteen years, and the evidence relevant to the unproved grant, together, and from the whole evidence thus considered may presume an actual grant.

The error centers in the inaccurate use of the word "presume." Possession may confer title as truly as grant confers title. Each is a mode of acquiring ownership; but the potency of possession as a means of acquiring title, when insufficient for that purpose, cannot be used to affect the relevancy of one or more acts of ownership by the alleged grantee of a specified grant, to the fact of the execution, contents, and validity of that grant. In discussing the ownership of intangible property or incorporeal hereditaments, it is often necessary to use the words "grant," "presumption," "possession," with differing meanings indicated only by the context, and there is much excuse for the occasional confusion of things, related but really independent; but there is far less excuse for any confusion of this nature in discussing the ownership of land.

Here the distinction between the acquisition of ownership through possession, and its acquisition through a conveyance from a former owner to the present possessor, is more clearly marked. Under the early English law land, unlike property in intangible rights, was not the subject of prescription in any form. *Twiss* v. *Baldwin*, 9 Conn. 291, 304; 2 Blackstone's Comm. 264. Substantially the only mode by which ownership could be transferred from one owner to another was some form of conveyance. Bare possession, the apparent

right of possession, and even the right of possession, might be acquired without terminating ownership of land once acquired and not conveyed. This ownership might be asserted and established through the writ of right, and then the lost possession be recovered. The limitation of the writ of right to a definite period of sixty years (32 Henry VIII, Cap. 2), to a limited extent, and the adaptation of the action of ejectment to the trial of title, with the limitation of the exercise of a right of entry to a period of twenty years (21 James I, Cap. 16), to a greater extent, rendered the practical acquisition of ownership by possession possible in many cases. After the passage of the statute of James I, cases might arise where the writ of right would be available to the true owner; but since the enactment of 3 & 4 Wm. IV, Cap. 27, for limitations of actions relating to real property, possession for twenty years, as a mode of acquiring ownership of land, has been more clearly recognized, and has sometimes been termed an acquisition of ownership through legislative conveyance.

In this State, however, possession as a mode of acquiring ownership of land has been recognized from earliest days; the only other method being some form of conveyance. The first settlers claimed to have acquired absolute ownership of lands within our limits, mostly by purchase from the native Indians, and partly by conquest, and their ownership in fact rested on these claims until the charter of 1662, which granted and confirmed to the charter government all land within its jurisdiction, to be holden of the king in free and common socage. Subsequently lands belonging to particular persons were held according to this tenure, but the land tenures of England were in no other way ever recognized as a force within our limits. The claims of ownership and purchase by conquest were never abandoned, and in 1793 our legislature declared that by the establishment of our independence the citizens of this State became vested with an allodial title to their lands, and therefore it declared "that every proprietor in fee simple of lands, has an absolute and direct dominion, and property in the same." Rev. 1796, p. 253. In 1639,

substantially coincident with the establishment of civil government, it was enacted that all land allotted to any particular person should be recorded; such record, as well as the record of any subsequent sale, was compulsory, and sale without record was of no value; a certified copy of the record served the purpose of a deed. 1 Col. Rec. 37. In 1660 it was enacted that all future conveyances should be made by deed duly recorded, and the requisites to the validity of such deed were prescribed. 1 Col. Rec. 358. In 1667 it was enacted that any person then standing possessed of land and so continuing uninterrupted for the space of one year, should be the owner thereof as fully as if allotted to him, with the same right to enter it for record. 2 Col. Rec. 67. In 1684 it was enacted that any person who had a right of entry or action, in respect of land detained from him since 1667 until the tenth of the month following the passage of the Act, and neglected to enforce such right, should thereafter be utterly excluded and disenabled from such suit or entry. It was further enacted that no person having an existing right of action or entry for land detained, could exercise the same unless within three years from the tenth of the following month, and that no subsequently-accruing right of action or entry for land detained could be enforced, unless within fifteen years from the accruing thereof. 3 Col. Rec. 146, 147. The substance of this last provision has since remained unchanged, and is found in § 1109 of the General Statutes, Rev. 1902. In 1727 it was provided that no valid conveyance of land could be made by any one ousted of possession thereof, except to the present possessor. 7 Col. Rec. 105, 106. The operation of these laws, most of which are still retained substantially in the form of their original enactment, was to establish, by legislative authority, possession for fifteen years as a distinct means and mode of acquiring ownership of land. One reason for this operation may be found in the wide differences between the English law of real estate and our own.

In *Bush* v. *Bradley*, 4 Day, 298, 306, JUDGE REEVE says: " We have always considered ownership as giving a right to

possession of real property, as much so as ownership of personal property. Ownership in the one case draws after it the possession as much as in the other case; and whenever a right of possession is lost, all title and ownership are lost. So the statute of limitations respecting lands has always been construed. The statute, in the words of it, does not take from the original proprietor his title; it only tolls his right of entry; and yet this statute has been always considered as barring all claim of title, whilst the same words in the English statute have been considered not as having any effect on the title, but only on the right of entry, and the lands may be recovered by a form of proceeding proper for such a case. The English law distinguishes betwixt a right of possession and a right of property; but our law does not. Wherever there is a right to real property, there is, of course, a right of possession, and the statute, which takes away the right of possession, takes away the right of property; and this is the reason that this statute has received a construction altogether different from the construction given to the English statute."

The controlling reason is found in the fact that the legislation mentioned, extending from 1639 to 1684, must be regarded as one piece of work, whereby our system of acquiring ownership of land was developed and settled. Conveyance, followed by record according to the forms prescribed for securing perpetual certainty, is the normal mode of acquiring ownership. When these forms are neglected, or the owner abandons his land, occupancy or possession continued for fifteen years is a distinct mode of conferring a new ownership on the person in occupation at the end of the term. *Eels* v. *Day*, 4 Conn. 95; *Sherwood* v. *Barlow*, 19 id. 471–477; *Price* v. *Lyon*, 14 id. 279–290; *Wright* v. *Wright*, 21 id. 329–345.

It follows, (1) that in establishing a legal title to land acquired through adverse possession, evidence is directed to the nature and extent of the occupancy, to the existence of any statutory disabilities, and to the unbroken continuance of the occupancy for fifteen years.

Mere possession is in no sense evidence of a conveyance, real or fictitious; on the contrary, its efficacy depends on the

Cahill v. Cahill.

assumption that the title by conveyance is in some one else. Possession of the requisite kind, for the requisite period, is the thing to be established by evidence, and when established by evidence this thing, viz, this fifteen years of adverse possession, directly extinguishes the former ownership, and directly invests the person in occupation at the termination of the statutory period, not with the title of the former owner, but with a new ownership acquired through this distinct mode. (2) In establishing a legal title acquired through conveyance, possession, occupancy, acts of ownership, may or may not, according to the circumstances of each case, be relevant to some fact tending to prove the conveyance through which ownership is claimed. In no other way is there any substantial, evidential relation between the mere fact of an actual occupation of land and the fact of a deed validly conveying that land to the occupant. This is unquestionable, unless it be true that when a person, claiming to be owner of land but unable to produce evidence of conveyance, is in possession for less than fifteen years, the natural inference is that he has received a deed of that land; but the natural inference in such a case is precisely the opposite. In view of our law regulating the making and record of deeds, the probability that a man in possession of land without evidence of conveyance, has not received a conveyance, is strong.

Mere possession, therefore, cannot be relevant to the fact of a conveyance by deed, although it may become relevant to some one of the facts sought to be established in proving the deed; and its relevancy and weight for that purpose must be determined by the ordinary rules of evidence, and cannot be confused with the theory of an arbitrary presumption used in discussing prescription for incorporeal hereditaments.

There is nothing in our decisions to justify such a confusion, although some suggestion of an excuse for it may be found in the individual opinions of CHIEF JUSTICE SWIFT and JUDGE GOULD, reported in *Sumner* v. *Child*, 2 Conn. 607, 610, 627, the case cited in the opinion of the majority of the court.

The case is a peculiar one. From what appears to have

been the substantially conceded facts, the case is this : William Dudley acquired ownership of the land in question. Upon his death his son, Joseph, entered into possession as heir, and remained in possession for twenty-eight years, when his title passed to the defendant through the levy of an execution. The same year administration was granted on the estate of William Dudley, and in due course of proceeding the land was sold to pay William's debts. It was purchased by the plaintiff, who shortly after brought the action of ejectment. Here was no question of conveyance or adverse possession. Joseph acquired ownership by descent, subject to the paramount authority of the law to appropriate the land to the payment of debts in administering his father's estate. If the grant of administration and the proceedings under it were valid, the plaintiff had a legal title ; if they were not valid, the defendant had a good title. The title depended solely on the validity of the administration proceedings. As the decrees of the Court of Probate had not been appealed from, the defendant could not attack their validity in the ejectment suit. He therefore relied upon the claim that the long delay in taking out administration should have the same effect as a release from the creditors of Joseph, and that the fiction of an imaginary grant, proved by immemorial usage or possession, was applicable to the case ; and the court in substance charged the jury that they might presume a title in the defendant, from length of possession alone. A majority of the judges of this court held that such instruction was erroneous. No opinion of the court was given. Three of the judges expressed their views. The CHIEF JUSTICE, who tried the cause below, warmly defended his charge. JUDGE SMITH argued that the charge was erroneous, because possession had nothing to do with the title, as that must depend wholly on the validity of the administration proceedings. JUDGE GOULD directly attacked the general proposition of JUDGE SWIFT, arguing that the jury could not presume a conveyance of land from length of possession alone, and for this reason the charge was erroneous. He also expressed his own views as to the possible relevancy of mere occupation in

proving the actual conveyance of land.   It is this part of his argument which the opinion of the majority restates with an implication of too broad approval.   We cannot be sure what number of the judges, in granting a new trial, acted on the views of JUDGE SMITH or JUDGE GOULD.   The case is certainly not an authority upon any question except the proposition advanced by JUDGE SWIFT.   Its interest lies in the academic duel between JUDGES SWIFT and GOULD, as the individual utterance of either is entitled to the greatest deference.   It is idle for present purposes to discuss their differences.   Each, to a certain extent, was looking at a different side of the shield, and neither kept clearly in mind the application of his general statements to the real facts of the case in hand.   The confusing nature of the discussion is indicated by the last retort of SWIFT, uttered in his Digest, where, referring to GOULD's opinion and the distinctions drawn by him, he says, with his occasional unguarded vigor: "This is a new doctrine; it was never before promulgated; no such distinction can be found in any book; it is opposed to the decision of every case that has been determined, and the *dicta* of every judge upon the subject." 1 Swift's Digest, 167.

The general trend of JUDGE GOULD's opinion supports the views I have expressed, but there is uncertainty in the language used in discussing the occupation of land merely as evidence.   If that language can fairly be treated as stating that when a legal title to land through a deed of conveyance is to be proved, the mere fact of possession or occupation of that land by the claimed grantee has any probative force except as it may be relevant to some fact in the case, in accordance with the general rules for determining the relevancy of one fact to another, then the statement seems to me clearly inconsistent with sound principle and unsupported by authority.

Applying to the facts of the present case the ordinary rules of evidence, it seems clear that the rejected evidence was immaterial, and its rejection furnishes no ground for a new trial.   The facts are these: The record title to the land in question is in Wallace and Sons, through a deed to them

dated August 29th, 1873, from the grantee of an admitted owner. Julia and Richard Cahill, one or both, were in possession from 1873 to the death of Julia in 1885. From his wife's death Richard was in possession—using the land as his own and mortgaging it as his own—until his death in 1901. The defendants are in possession as devisees of Richard; the plaintiffs claim as heirs of Julia Cahill. Richard, at the time of his death, had acquired a complete title through adverse possession since his wife's death, unless his possession was through the right of another. The plaintiffs claim that Julia at her death was owner of the land, and Richard until his death continued in possession as tenant by the curtesy. Their whole case rests upon maintaining this claim, for unless tenant by the curtesy, the title in Richard at his death is certain. Their claim, that Julia being in possession at the time of her death and for a long time before, the court should presume, in the absence of countervailing testimony, a legal title in her, was properly overruled, and may be laid out of the case. They attempted to prove ownership in Julia through adverse possession, but as there was no possession, by either Julia or Richard for more than twelve years at the time of Julia's death, the court, for this reason, was compelled to find she had no ownership through adverse possession. Any rulings on evidence as applicable to her title through adverse possession are, therefore, immaterial.

There remained the claim of title in Julia through a deed of conveyance, and the plaintiffs' case then rested solely on the fact of conveyance. The fact in issue is further narrowed through the plaintiffs' introduction of evidence proving the possession by Julia, at certain times between 1873 and 1885, of a document which they claim was a deed of conveyance of the land in question to Julia, and this document represented the only conveyance claimed. Unless this document is proved to have contained a valid conveyance to Julia, there is no foundation in the case for the claim of her legal title. The document was not produced, and its contents, to be proved by secondary evidence, constituted the ultimate fact which must determine the relevancy and ma-

Cahill v. Cahill.

teriality of the evidence rejected. Upon the trial Julia's son, one of the plaintiffs, was asked whether his father had ever done anything on or about the land during his mother's life. The question was excluded as immaterial. The ruling would seem unquestionably correct. It is claimed it was relevant to the fact of possession by Julia, but testimony of every fact tending to prove Julia's possession was admitted. Mere negative testimony, that some one else did nothing about the place, is too remotely related to the fact of her possession to be admissible.

It is claimed that the absence of acts of ownership by Julia's husband might characterize the nature of her possession as adverse to him. Possibly such negative conduct by the husband might be relevant, if the question were whether ownership by adverse possession inured to the wife separately or to the husband. But, as such question was excluded from the case by want of possession of any kind for the requisite period, relevancy on this ground is wholly immaterial.

Whether the actual occupation by Julia was adverse to her husband or not, cannot affect its relevancy to the contents of the document, which was operative as a conveyance to her, or not at all.

It is suggested that the court has found that the husband was in possession, and by inference that the wife was not, and might not have made this finding if an answer to the question had been permitted. I think a negation of Julia's actual occupancy is not a proper inference from this finding, and that it is controlled by a theory as to the legal effect of acts of ownership by the wife, and not at all by any actual acts of ownership by the husband, which were not claimed by the defendants to have been proved. But I prefer to assume that the court did find that Julia was not in possession, and that such finding might possibly have been influenced by the negative testimony excluded, for this brings me to a consideration that renders all speculation as to the possible materiality of that testimony to the fact of Julia's possession unnecessary. The fact of exclusive possession by Julia was wholly immaterial, in view of the facts proved and claimed

to be proved in respect to the document in her possession. It appears from the finding of the court, the statement of the facts on which the plaintiffs' claims of law were based—incorporated in the finding—and the plaintiffs' proposed draft for a finding, that all the subordinate facts proved or claimed to have been proved by the testimony in respect to the deed of conveyance, were these: Julia on two or three occasions held in her hand a document which she said was a deed of her land. On one occasion she handed some papers to Mr. Webster to keep for her. He kept them some years and subsequently returned them. Among these papers was a document which Mr. Webster testified was a deed to Julia. Julia was in actual possession of the land from 1873 to 1885, claiming to be owner. These bald facts are all, and are clearly insufficient to prove a conveyance from the owner of the land to Julia Cahill. It is enough that there is absolutely nothing to prove that any particular person, or any unnamed person, being owner of the land, made any conveyance of any kind to Julia Cahill. Actual possession of the land by her is immaterial and wholly incompetent to the proof of this fact, and without this fact, as well as others that are not proved, the acquirement of ownership by Julia through a valid deed of conveyance has not been proved, and therefore the plaintiffs have not established a legal title for themselves. It follows that upon all the facts in the case, together with the fact which it is claimed the excluded testimony would prove, the judgment of the trial court is the only one that can lawfully be rendered.

Under these circumstances the exclusion of the testimony, even if theoretically erroneous, furnishes no ground for a new trial.

I dissent from the opinion of the majority, because I fear it is liable to raise an unauthorized and unnecessary doubt as to the clear distinctions under our law in respect to the acquirement of ownership in land through conveyance, and its acquirement through adverse possession, and which control the relevancy and materiality of mere possession in proving a legal title through either mode of acquisition; I dissent from

the result because it seems to me clear that it grants a new trial for the exclusion of testimony which, if admitted, could not lawfully have induced a different judgment. I think there is no error in the judgment of the Superior Court.