THE CENTER BRIDGE COMPANY *vs.* THE WHEELER
AND HOWES COMPANY.

Third Judicial District, New Haven, January Term, 1913.
PRENTICE, THAYER, RORABACK, WHEELER and BENNETT, Js.

A plaintiff in ejectment must recover upon the strength of his own title
and not by reason of the weakness of his adversary's.

Questions which affect the interests of those who are not parties to the
action, obviously ought not to be answered by this court on a
reservation for advice, unless their determination is essential to
a decision of the cause as between the parties to the record.

A conveyance of land bounded upon a railroad right of way presump-
tively carries the title to the middle line of the railroad property.

Argued January 28th—decided March 11th, 1913.

ACTION in the nature of ejectment, brought to and
reserved by the Superior Court in Fairfield County,
*Holcomb, J.*, upon an agreed statement of facts, for
the advice of this court.

In 1847, and for a long time prior thereto, one Birds-
eye G. Noble was and had been the owner in possession
of a considerable tract of land in Bridgeport, adjoining
the harbor. In that year he conveyed to the New York
and New Haven Railroad Company, by warranty deed,
a right of way four rods in width across this land from
the harbor northerly "for the construction and use of
said railroad." This strip was occupied by the main
line of the railroad company until 1900, when its layout
was changed. Down to 1868 there was only a single
track, laid substantially in the middle of the right of
way.

In 1850 William H. Noble, the successor in title to
Birdseye G. Noble to the entire tract the latter had
owned, conveyed to Carmi Hart the land lying next
easterly of the right of way, and bounded on the side

next to the railroad "on the land of the New York and
New Haven Railroad and running along the same."
The defendant is the successor in title to all the land
thus conveyed to Hart.

In 1855 P. T. Barnum and William H. Noble, the
successors in title to William H. Noble to the land not
conveyed by the latter to Hart as recited, conveyed to
the plaintiff land on the opposite side of the right of way,
and described as bounding east on Carmi Hart.

In 1858 the plaintiff conveyed to one Sanborn that
portion of the land acquired by it under the deed last
described, which adjoined the right of way. The east
boundary in this conveyance to Sanborn was "the
track of the New York and New Haven Railroad."

The plaintiff claims no title under Sanborn. The
land in controversy is the four-rod strip which com-
prised the railroad right of way. In its length it does
not extend in either direction beyond the limits of the
land conveyed to Hart on one side, or of that conveyed
to the plaintiff by Noble and Barnum on the other.

In 1861 the trustee of the estate of William H. Noble
made a conveyance to Charity Barnum of the fee
simple of the undivided one-half part of the land
covered by the right of way; and in 1864 P. T. and
Charity Barnum gave to Sanborn a quitclaim deed of
the western portion of the right of way, bounded east
by the middle of the tracks of the railroad, and further
describing the tract as thirty-three feet in width.

In 1864 the plaintiff conveyed by warranty deed, to
the city of Bridgeport, its bridge across Bridgeport
Harbor and Pequonnock River, located a short distance
westerly of the railroad right of way, "together with
all the real estate in any way connected with or used
therewith or belonging to us." Following this general
language was a particular description of the real estate,
which includes a piece of land at the easterly end of the

bridge described as bounded easterly on the land conveyed to Sanborn in 1858, as stated.

Other facts found need not be recited, as they are not involved in the discussion of the opinion.

*William H. Comley, Jr.*, for the plaintiff.

*Thomas M. Cullinan* and *William H. Kelsey*, for the defendant.

PRENTICE, C. J.   This is an action of ejectment to recover possession of a strip of land which was for many years used by the railroad company now known as the New York, New Haven and Hartford Railroad Company as a part of its right of way.   The plaintiff must recover, if it recovers at all, upon the strength of its own title shown, and not by reason of the weakness of the defendant's title.   *Cahill* v. *Cahill*, 75 Conn. 522, 524, 54 Atl. 201, 732; *Moran* v. *Denison*, 79 Conn. 325, 330, 65 Atl. 291.

Our advice is asked upon the ultimate question of the plaintiff's right to recover upon the facts found, and also in response to four other incidental questions.   One of these relates to the rights of the railroad company; the plaintiff claiming that it has abandoned the use of the land for railroad purposes, and that with this abandonment it has lost all right or title in or to the property. Another asks an adjudication of the rights of the city of Bridgeport by virtue of a certain deed by the plaintiff to it.   Neither the railroad company nor the city is a party to the action.   The impropriety of answering these two questions is thus apparent.   Fortunately, however, their answer is not involved in a determination of the right of the plaintiff to have the judgment it seeks.   The remaining two incidental questions call for the definition of a boundary described in each of two

deeds. The one is the western boundary of the deed to Carmi Hart; the other, the eastern boundary of the deed of the plaintiff to Sanborn. These boundaries determined, the way to a decision of the ultimate question of the plaintiff's right to recover is made clear.

The deed to Carmi Hart, bounding upon the land of the railroad and running along the same, in the absence of circumstances indicative of a contrary intent of the parties, carried the land to the middle line of the four-rod strip in which it had its easement of way. It is the well-settled rule that where a deed conveys land bounded upon a highway the fee is presumptively carried to its middle line. *Champlin* v. *Pendleton,* 13 Conn. 23, 26; *Chatham* v. *Brainerd,* 11 Conn. 60, 83. Where the boundary is a non-navigable stream, the rule also is that the grant extends to the middle of the stream. *Mill River Woolen Mfg. Co.* v. *Smith,* 34 Conn. 462, 463. As a general rule, a deed bounding on a canal carries the title to the middle of the canal. *Goodyear* v. *Shanahan,* 43 Conn. 204, 210.

*Seery* v. *Waterbury,* 82 Conn. 567, 74 Atl. 908, presented a case of a boundary upon a private way. We there adopted the rule that presumably the title was not carried beyond the border line of the way. The reason assigned for this change of presumption in the case of a private way from that which prevails in the case of a highway, stream, or canal, was that it seemed to be more in consonance with the rule of justice under the conditions presented by private ways. The Maine cases, whose rule we adopted, have called attention to some of the reasons for this conclusion. *Bangor House* v. *Brown,* 33 Me. 309, 314; *Ames* v. *Hilton,* 70 Me. 36, 43. The fee in a private way is subject to a private easement only, and that easement may be terminated at any time at the will of the parties. A highway easement is one in favor of the public generally,

and has attached to it the idea of permanence. The prospect of benefit from the retention of the fee in the two cases thus differs essentially. Again, in respect to highways, motive for a continuance of ownership of the fee, disconnected with ownership of the abutting land, is hard to discover. On the contrary, a valid reason may well exist why the grantor of a private way should desire to retain the fee of the land.

The easement which a railroad acquires in its right of way is like that of a highway, in that it is for the use of the public. *New York, N. H. & H. R. Co.* v. *Long,* 69 Conn. 424, 437, 37 Atl. 1070. It is one which has attached to it the incidents of exclusive occupation and enjoyment for the public use in a peculiar degree. *New York & N. E. R. Co.* v. *Comstock,* 60 Conn. 200, 210, 22 Atl. 511; *Nolan* v. *New York, N. H. & H. R. Co.,* 53 Conn. 461, 472, 4 Atl. 106. It possesses the feature of prospective permanence no less than does that of a highway. All of the considerations which have led courts generally to recognize a presumed intent to have a bound upon a highway, stream, or canal, carry to the middle line, appear to be present in the case of a bound upon a railroad right of way; and therein are to be found the true analogies to the latter situation. They are not found in cases where the bound is upon a mere private way.

The deed by the plaintiff to Sanborn bounded the property conveyed east on the track of the railroad. The plaintiff contends that this language is to be interpreted and given the same effect as though the bound was expressed to be upon the railroad, or the railroad right of way. This construction, most favorable to the plaintiff, would not, however, suffice to substantiate its claim that nothing passed to the grantee within the limits of the right of way. The same principle of construction which operates to extend the Hart deed to

include the eastern half of the four-rod strip operates also to carry the boundary line of the Sanborn deed from the opposite direction up to the middle line of that strip, and thus to embrace the western and remaining half of it.

This construction of these two deeds establishes that the title to the eastern half of the land in controversy is now in the defendant: that the title to the western half is in some other party than the plaintiff; and that, as a necessary consequence, its action must fail for lack of title in itself shown.

The Superior Court is advised that the deed to Carmi Hart, referred to in question two, and that from the plaintiff to George P. Sanborn, referred to in question three, each conveyed to the respective grantees therein the fee simple of the land over which the railroad company had its right of way up to the middle line thereof, and that the plaintiff is not entitled to the immediate possession of the land described in the complaint.

In this opinion the other judges concurred.